STATE, RESPONDENT, v. JOLLY, APPELLANT.

(No. 8,203.)

(Submitted June 10, 1941.  Decided September 4, 1941.)

[116 Pac. (2d) 686.]

*Mr. Jess L. Angstman,* for Appellant, submitted a brief and argued the cause orally.

*Mr. John W. Bonner,* Attorney General; *Mr. Fred Lay,* Assistant Attorney General, and *Mr. Oscar C. Hauge,* County Attorney of Hill County, submitted a brief; *Mr. Lay* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendant appeals from a judgment of conviction of receiving stolen property. The contentions are that there was no sub-

stantial evidence to support the judgment, and that the court erred in entering judgment and in denying the defendant's motion for a new trial. The only question is whether there is competent evidence to sustain the jury's conclusion that when the defendant bought or received the stolen property he knew it to have been stolen. (Sec. 11388, Rev. Codes.)

Although the machinery, consisting of an air compressor and motor, was stolen some time between October, 1938, and February, 1939, the defendant testified that he bought it about June 1, 1939, from a man who had operated a beer parlor at the Fresno Dam but had since died; that he did not then know that it was stolen, and that he never made the statement attributed to him by the witness Dees hereinafter mentioned. The motor and compressor were painted green prior to the theft but were painted white or gray when found in defendant's possession, thus changing their appearance and concealing the numbers on the compressor. Prior to its installation in the cellar it was kept in a public card room at the rear of the beer parlor with something thrown over it, and again after the cellar had been flooded it was in full view in the beer parlor until reinstalled. The defendant testified that it was of the same color when he bought it and that he did not intentionally conceal it at any time. The only evidence bearing upon defendant's guilty knowledge was that of the witness Dees.

Dees testified that he had known defendant for about three years and had worked for him at the beer parlor in the fall of 1938 and at times during 1939; that he first saw the air compressor and motor in the card room at the rear of the beer parlor about the middle of June, 1939; that it was then painted white and there was a "canvas coat or something" thrown over it; that he helped the defendant install it in the basement shortly before July 4, 1939, to furnish compressed air for the beer. His testimony continued in part, as follows, upon examination by the prosecution:

"Q. Now, did you ever hear Mr. Jolly tell you to be careful about it? A. I don't recollect.

"Q. Did you ever hear Mr. Jolly say that it was hot and that you would have to be careful? A. I don't recollect that. I don't remember."

The county attorney then asked and without objection was permitted to cross-examine the witness. He conducted a lengthy cross-examination during which there was admitted, without any objection or effort to limit its evidentiary effect, an affidavit made by Dees about three months before the trial. In the affidavit Dees stated that when he helped Jolly install the equipment during the spring of 1939 "Jolly told Dees that it was 'hot' and that they would have to be careful."

The sheriff also testified without objection that on November 20, 1940, less than three weeks before the trial, Dees told him that Jolly had made the statement.

No objection was made to any of this evidence, nor was there any attempt by offered instructions or otherwise to limit its effect to the impeachment of the witness or to instruct the jury to disregard it for other purposes.

The argument on appeal is limited almost entirely to the ██ effect of evidence of prior conflicting statements of a party's own witness under section 10666, Revised Codes, and the circumstances here shown: Whether it is limited to the purpose of impeachment, or whether it constitutes affirmative evidence of the fact stated. The question whether under the circumstances the so-called impeachment should have been permitted is not raised, no objection of any kind having been made by the defense.

While the weight of authority would limit such evidence to the impeachment of the witness' subsequent testimony on the stand (2 Wigmore on Evidence, 2nd ed., 459, sec. 1018), the better reasoning would seem to support the other view (3 Wigmore on Evidence, 3rd ed., 687, sec. 1018), since the prior statement is not properly subject to objection as hearsay, the witness being present in court for cross-examination concerning it.

The former rule was stated as the law in *State* v. *Kinghorn,* 109 Mont. 22, 93 Pac. (2d) 964, largely upon the authority of the above section from Wigmore as quoted from the Second

Edition in *State* v. *D'Adame,* 84 N. J. L. 386, 86 Atl. 414, Ann. Cas. 1914B, 1109, prior to its amendment in the Third Edition, as above cited, to state the more logical rule.

The old rule was stated also as the law in *State* v. *Willette,* 46 Mont. 326, 127 Pac. 1013, 1016, and seems never to have been overruled. Therefore if *stare decisis* is to control it must be held that the effect of the evidence should be limited to impeachment. However, that would be of no avail to defendant here, since here, as in the *Willette Case,* no attempt was made by objection, offered instruction, or otherwise, to limit the effect of the evidence. In that case this court, speaking through Mr. Chief Justice Brantly, said: "An instruction limiting the purpose for which the evidence was admitted would have been proper. No request was made in this behalf, however. In the absence of such a request, the court cannot be put in error for neglecting to give it." If that well grounded principle needs the aid of the rule of *stare decisis,* it is no less entitled to it than the old rule relative to the effect of impeaching evidence. Consequently the appellant in this case would profit no more from our adherence to the old rule than did the appellant Willette.

Moreover, an attempt to limit the effect of the evidence in this case would be rather embarrassing, for the reason that strictly speaking there was nothing to impeach by the cross-examination, the affidavit, and the sheriff's testimony. Dees had not testified on the stand that Jolly did not make the statement in question, but only that the witness did not then remember hearing him make it. The thing to be impeached was his present memory, not his present testimony concerning defendant's statement.

However, an examination of Dees' statements forces us to conclude that they constitute no substantial evidence of defendant's criminal knowledge. Dees stated only that when the equipment was being installed defendant told him that "it was 'hot,' and that they would have to be careful." The word "hot" was not defined in the statements, but it is apparently assumed that in the light of the context we should construe it,

not according to the "approved usage of the language" as in a statute (sec. 15, Rev. Codes), but according to the underworld jargon as meaning stolen goods, perhaps upon the theory that it is a "technical word" or has "acquired a peculiar and appropriate meaning in law." (Sec. 15, supra.) For present purposes we will not pass upon that rather questionable assumption.

In any event, we find that the word was used only to explain why "they would have to be careful," and using the "technical" meaning we find the entire supposed statement by defendant utterly meaningless. They were merely taking it from one of the public rooms of the beer parlor where it had been for fully a month, and installing it out of sight, in an appropriate place in the basement. Obviously in so doing no extra care was necessitated because the property was stolen. Considering the circumstances, defendant's alleged statement is so inherently improbable or incredible that it must be disregarded (*Casey* v. *Northern Pac. Ry. Co.*, 60 Mont. 56, 198 Pac. 141, and cases therein cited), and cannot be considered as any substantial evidence of the crime charged. Thus Dees' statement, if tending to prove defendant's alleged statement, constitutes no substantial evidence of the crime, and cannot sustain the verdict. The judgment is therefore ordered reversed and the information dismissed.

ASSOCIATE JUSTICES ANDERSON and MORRIS concur.

MR. JUSTICE ANGSTMAN, Concurring Specially:

I concur in the result reached in the foregoing opinion but not with all that is said in it. I do not find any different statement in 3 Wigmore on Evidence, 3rd ed., section 1018, page 687, from that appearing in 2 Wigmore on Evidence, 2nd ed., section 1018, page 459, except that in the third edition the author, by way of comment, adds two lines reading: "Psychologically of course the one statement is as useful to consider as the other; and every day experience outside of court rooms is in accord." In both the second and third editions Mr. Wigmore makes it

plain that the practically universal rule maintained by the courts is that prior self-contradictions are not to be treated as having any substantive or independent testimonial value. This rule we have followed in this state. (*State* v. *Kinghorn*, 109 Mont. 22, 93 Pac. (2d) 964.

Furthermore, I do not agree that it is necessary for the defendant to request an instruction limiting the purpose of the evidence where, as here, it is the only evidence in the case upon which the conviction can stand.

It is true that in the case of *State* v. *Willette*, 46 Mont. 326, 127 Pac. 1013, 1016, this court stated: "An instruction limiting the purpose for which the evidence was admitted would have been proper. No request was made in this behalf, however. In the absence of such a request, the court cannot be put in error for neglecting to give it." In that case there was other evidence sufficient to support the verdict. Here the defendant is not seeking to place the court in error for failure to give an instruction. His contention is that there is not sufficient evidence to warrant the conviction of the defendant. I think this contention may be raised by defendant for the first time in this court, and must be sustained in this case. The only thing that the impeaching evidence proved (even assuming that the word "hot" must be understood as meaning stolen goods) was that Dees was unworthy of belief. It did not furnish any evidence that defendant was guilty of a felony; in other words, it did not tend to prove that defendant made the statement attributed to him. All that it did was to furnish proof that Dees made the statement contrary to the statement made by him on the witness stand. I, therefore, am able to concur in the result announced in the foregoing opinion.

MR. JUSTICE ERICKSON:

I agree with the above concurring opinion of Mr. Justice Angstman.