No. 00-636

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 245

STATE OF MONTANA

Plaintiff and Respondent,

v.

EDWARD GIANT III,

Defendant and Appellant.

STATE LAW LIBRARY

DEC 2001

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kristina Guest, Office of Appellate Defender, Helena, Montana

For Respondent:

Mike McGrath, Montana Attorney General, John Paulson, Assistant Montana
Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County
Attorney, Ira Eakin and Beverly G. Tronmd, Deputy Yellowstone County
Attorneys, Billings, Montana

FILED

OEC 0 6 2001

Filed:

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: November 29, 2001

Decided: December 6, 2001

Justice James C. Nelson delivered the Opinion of the Court

¶1 Edward Giant III (Giant) was charged by information with attempted deliberate homicide in violation of §§ 45-4-103 and 45-5-102, MCA, and aggravated assault in violation of § 45-5-202(1), MCA, in the District Court of the Thirteenth Judicial District, Yellowstone County. The attempted deliberate homicide charge was dismissed before trial. At the close of the State's evidence at trial, Giant moved for a directed verdict of acquittal. The District Court denied the motion and the jury found Giant guilty. Giant appeals the denial of his motion for a directed verdict, asserting that the evidence was insufficient for a conviction as a matter of law because evidence of flight was the only corroboration of the prior inconsistent statements of the victim identifying him as the assailant. He also appeals a number of trial and sentencing issues. We reverse the District Court's denial of his motion for a directed verdict and, therefore, decline to address the remaining issues.

¶2 We address the following issue on appeal: Did the District Court err in denying Giant's motion for a directed verdict of acquittal when the prior inconsistent statements identifying Giant as the assailant were corroborated solely by flight evidence?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶3 On June 5, 1998, Deborah Giant (Deborah) was assaulted in her home after work. While Deborah was standing at the kitchen sink, someone attacked her from behind by wrapping duct tape around her neck. Her attacker then dragged her by the hair to her bedroom, placed her on or near a large piece of black plastic on the floor, and placed duct

tape over her mouth, around her head and around her wrists. She struggled with her assailant for an extended period, but was beaten about the face, choked, and stabbed in the arm with an ice pick. The ice pick lacerated one of the radial nerves controlling her wrist and fingers. After the attack, Deborah drove herself to the hospital. Upon continued questioning, she possibly admitted to one doctor that her husband, Giant, was the assailant.' Deborah returned to her house, partially cleaned up, and spent the night there alone.

¶4     The next day, June 6, 1998, Deborah reported the assault to the police and told them Giant was the assailant. In addition to the events described above, Deborah said Giant threatened her with a gun. Deborah also told the police that Giant took their two younger sons to a hotel the night of the assault, withdrew all their savings, and took cash advances on all their credit cards. She said the youngest son, M., took a bag of approximately $27,000 cash from the hotel room and returned home by himself in the early morning hours of June 6, 1998. While with the police, Deborah made arrangements over the phone with Giant to exchange the cash for the middle son, D. However, an exchange never took place and D. was discovered at home later on June 6, 1998, when the police executed a search warrant. The search produced pieces of duct tape, a broken steak knife, blood stained clothing and bedding, a large piece of black plastic, and a gun and ammunition. No ice pick was found.

¶5     A warrant was issued for Giant's arrest. Giant's truck was found a couple days later with the license plates inside the truck. Officer Richardson (Richardson) contacted Giant on

---

'The doctor in question did not testify at trial. Deborah admitted at trial it was "possible" she told him that her husband was the assailant.

3

June 10, 1998, by calling his cellular phone number. Giant confirmed his identity to Richardson but refused to turn himself in. Phone records revealed Giant was in the San Francisco area. Four months later, on October 8, 1998, Giant returned to Billings and turned himself in to the police. The State charged Giant with attempted deliberate homicide and later amended the information to add a charge of aggravated assault. Giant made a motion to dismiss one of the charges for multiplicity or to charge in the alternative before trial and the State responded by making a motion to dismiss the charge of attempted deliberate homicide.

¶6     At the trial of aggravated assault, Deborah testified to the same sequence of events, but said that her oldest son, E., was the assailant rather than her husband.  She testified that E. was high on drugs at the time, and that Giant walked in on the assault and engaged E. in a struggle to get E. to stop.  Deborah said that E. was angry at her because Giant told him that Deborah was supposedly having an affair with an employee that was E.'s age and also that Deborah wanted to have E. committed in order to cure his drug problem.   She testified that Giant got the gun to protect her from E.   The rest of her testimony--that Giant took the younger boys to a hotel., converted their liquid assets to cash, and agreed to exchange D. for the cash--was consistent with her earlier statements. Deborah explained the change in her story by testifying that she and Giant were intending to get a divorce during the time of the assault, that she did not want to report her son E. to the police, and that she was mad at her husband for taking the children and the cash. Due to the inconsistency between Deborah's

4

pre-trial statements and her trial testimony, the State introduced parts of her prior inconsistent statements made to the police, to the county attorney's office, to doctors, and to the District Court in which she identified Giant as the assailant and questioned her regarding her conversation with a doctor the night of the assault.

¶7 The remaining witnesses were three law enforcement officers, one of the doctors who treated Deborah, and a victim witness assistant with the Billings County Attorney's Office. Some of the evidence seized at the home was introduced, as were pictures of Deborah's injuries taken shortly after the assault. None of the children testified at trial to corroborate either of Deborah's statements. Deborah moved to Texas after the assault and the State was unable to properly serve her or her children. Deborah eventually agreed with the State to come to Montana and voluntarily testify if the State would cease its efforts to serve process on the three children.

¶8 At the close of the State's evidence, Giant moved for a directed verdict, arguing that Deborah's prior inconsistent statements could not serve as the sole basis for conviction without corroboration. Giant argued there was no corroborating evidence to confirm that he was the assailant rather than his son. The State admitted that no forensic testing was performed on the evidence seized from the Giant's home. The State said it had no indication before trial that E. would be implicated as the assailant and that Deborah stopped cooperating with their investigation. The State argued that the undisputed testimony of Giant's flight behavior was sufficient to corroborate Deborah's prior inconsistent statements and that the

5

evidence seized from the home matched her statements. The District Court denied Giant's motion, citing evidence of Giant's flight as sufficient to corroborate the prior inconsistent statements. Giant declined to present any evidence, the case was submitted to the jury, and the jury returned a guilty verdict. Giant now appeals from the denial of his motion for a directed verdict. Further details of the testimony and evidence at trial will be discussed below.

## II. STANDARD OF REVIEW

¶9     This Court reviews denial of a motion for a directed verdict of acquittal to determine whether the district court abused its discretion. State v. *Cochran*, 1998 MT 138, ¶ 28, 290 Mont 1, ¶ 28, 964 P.2d 707, ¶ 28. A directed verdict of acquittal is appropriate when the State fails to prove its case and there is no evidence upon which a jury could base a guilty verdict. *State v. Longstreth*, 1999 MT 204, ¶ 16, 295 Mont. 457, ¶ 16, 984 P.2d 157, ¶ 16, *cert. denied*, 528 U.S. 1167, 120 S.Ct. 1187, 145 L.Ed.2d 1093 (2000); § 46-16-403, MCA. No abuse of discretion occurs if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cochran*, ¶ 28. However, if the denial of directed verdict is based on a conclusion of law, like our review of any conclusion of law by a district court, we review the conclusion of law *de novo* to determine whether it is correct. *State v. Simmons*, 2000 MT 329, ¶ 9, 303 Mont. 60, ¶ 9, 15 P.3d 408, ¶ 9 (reviewing motion to suppress).

¶10     Because the State cites to evidence presented at the sentencing hearing along with

other evidence not admitted at trial in order to support its arguments regarding the directed verdict, we must first emphasize that, in considering the denial of a motion for a directed verdict, we only consider the trial testimony and the evidence properly before the jury. We cannot consider potential evidence that was not introduced, offers of proof discussed during arguments on motions if the evidence is not eventually offered and accepted, discussions in chambers or during sidebars, or evidence not admitted at trial but admitted during the sentencing hearing. To consider evidence outside the trial setting would defeat due process generally and motions for directed verdict specifically. See § 46-16-403, MCA, (determination of sufficiency of evidence to support guilt is made "at the close of the prosecution's evidence or at the close of all the evidence . .").

## III.  DISCUSSION

¶11     **Did the District Court err in denying Giant's motion for a directed verdict of acquittal when the prior inconsistent statements identifying Giant as the assailant were corroborated solely by flight evidence?**

¶12     When considering a motion for directed verdict to determine whether any rational trier of fact could find the elements of a crime satisfied beyond a reasonable doubt, the district court and this Court must consider the evidence properly admitted and before the jury according to the rules that govern the use of evidence in a criminal case. The interaction of two evidentiary rules is at issue in this case. We have previously held that a criminal conviction cannot be sustained where the only evidence of some essential element of the crime is a prior inconsistent statement. State *v. White Water* (1981), 194 Mont. 85, 89, 634

7

P.2d 636, 639; Stare *v. Gommenginger* (I 990), 242 Mont. 265,278, 790 P.2d 455, 463; *State v. Jolly* (1941), 112 Mont 352, 355-56, 116 P.2d 686, 687-88 (holding prior inconsistent statement insufficient for conviction before the current Montana rule was enacted); compare *State v. Fitzpatrick* (1980), 186 Mont. 187, 195-98, 606 P.2d 1343, 1348-49 (holding prior inconsistent statement of witness admissible as substantive evidence); *State v. Woods* (1983), 203 Mont. 401, 411-12, 662 P.2d 579,584.

¶13    Further, we have frequently held that evidence of flight is not sufficient in itself to prove guilt. *State* v. *Davis,* 2000 MT 199, ¶ 41,300 Mont. 458, ¶ 41, 5 P.3d 547, ¶ 41; *State v. Hall,* 1999 MT 297, ¶ 47, 297 Mont. 111, ¶ 47, 991 P.2d 929, ¶ *47; State v. Patton* (1996), 280 Mont. 278, 290, 930 P.2d 635,642; *State* v. *Bonning* (1921), 60 Mont. 362, 364-65, 199 P. *274, 275 overruled on other grounds by State v. Campbell* (1965), 146 Mont. 251,263, *405* P.2d *978, 985; State v. Paisley* (1907), 36 Mont. 237, 252, 92 P. 566, 571; see also *United* States *v. Flores* (5th Cir. 1977), 564 F.2d 717, 718-19 (finding flight alone insufficient to infer guilt beyond a reasonable doubt). Because the District Court concluded that evidence of Giant's flight could serve to corroborate Deborah's prior inconsistent statements when it allowed the case to go to the jury, this case presents the question of whether flight, insufficient to prove guilt as matter of law on its own, can corroborate a prior inconsistent statement, also insufficient to prove guilt as a matter of law on its own. To answer this question, we must analyze the rationale behind each rule.

¶14    Before we do that, however, it is important to summarize the evidence before the jury

in the instant case. The fact that an assault occurred is undisputed. The evidence seized from the Giant home and Deborah's physical condition after the assault are consistent with and could corroborate either possible assailant identified by Deborah. Further, it is undisputed Giant was present and held a gun in both versions of Deborah's story of the assault. No forensic testing was done on any of the evidence collected during the search of the Giant home that could corroborate either Giant or E. as the assailant.

¶15 The evidence of flight is undisputed. Giant was preparing to leave town when he withdrew all available cash from the couple's savings accounts and credit cards and took the two younger boys, D. and M., to a hotel. The night of the assault, Giant kept the money and left the house. Later, Giant abandoned his truck with the license plates inside. Richardson contacted Giant on his cell phone five days after the assault and asked Giant to turn himself in. Giant refused and would not say where he was. Giant was at large for four months. When Giant turned himself in, he said he was tired of running. Given this evidence, Deborah's prior inconsistent statements and Giant's flight make up the only evidence against Giant on the essential element of the identity of the assailant.

## A. Prior Inconsistent Statements

### 1. History of the Enactment of the Current Federal and Montana Rules of Evidence 801(d)(1)(a)

¶16 Originally, common law allowed prior inconsistent statements to be used for impeachment purposes, but prohibited the use of prior inconsistent statements as substantive evidence. 5 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE, § 801App.01[2]

at 4 (2d ed. 2001) [hereinafter WEINSTEIN'S]; *Jolly*, 112 Mont at 355-56, 116 P.2d at 687-88. In 1975, the Federal Rules of Evidence amended the common law rule to allow prior inconsistent statements to be considered substantive evidence when those prior statements were "[g]iven under oath subject to the penalty of perjury at a trial or hearing, or other proceeding, or in a deposition . ." Rule 801 (d)(l)(A), Fed.R.Evid. The Montana rule, enacted in 1976, differs from its federal counterpart in that all prior inconsistent statements may be admitted as substantive evidence in Montana under Rule 801(d)(l)(A), M.R.Evid. *In re Goldman* (1978), 179 Mont. 526, 549-50, *588 P.2d 964, 977; Fitzpatrick,* 186 Mont. at 195-98, 606 P.2d at 1348-49; *Woods,* 203 Mont. at 411-12, *662 P.2d at 584; compare State* v. *Mally* (1961), 139 Mont. 599, 608-09, 366 P.2d 868,873 (holding conviction based in part on prior inconsistent statement valid before current rule was enacted); *State v. Borchert* (1970), 156 Mont. *3* 15, *320, 479 P.2d 454, 457; State v. Longacre* (1975), 168 Mont. 311, 312-13, 542 P.2d 1221, 1222.

¶17     The original draft of Federal Rule 801(d)(l)(A) as recommended to Congress by the United States Supreme Court was identical to the current Montana rule and placed no restrictions on the use of prior inconsistent statements as substantive evidence. Walker Jameson Blakey, *Substantive Use of Prior Inconsistent Statements Under the Federal Rules of Evidence,* 64 Ky. L.J. 3, 6-9 (1975-76) [hereinafter Blakey] (analyzing the legislative history behind and potential problems with applying the new Rule 801(d)(l)(A), Fed.R.Evid.). The original federal proposal and Montana's rule followed the corresponding

rules developed in the Model Code of Evidence and the Uniform Rules of Evidence. 2 JOHN W. STRONG ET AL., MCCORMICK ON EVIDENCE, § 251, at 116 & n.14 (5th ed. 1999) [hereinafter MCCORMICK]; Blakey, at 3.

¶18 The original version was initially recommended by the Advisory Committee on Rules of Evidence, Rules of Practice and Procedure of the Judicial Conference of the United States (Advisory Committee). Rules of Evidence for United States Courts and Magistrates, Amendments to the Federal Rules of Civil and Criminal Procedure, 56 F.R.D. 183, 293 (1973); Blakey, at 6. This version was recommended based on the assertion by modem commentators on evidence that cross examination during trial was sufficient both to remove prior inconsistent statements from the definition of hearsay, and to provide the jury a means to assess the reliability and trustworthiness of these statements. WEINSTEIN'S, §§ 801App.01[4] at 14-18, [5] at 36-36.3 (Advisory Committee's letter to the Senate Judiciary Committee and clarification after Rule 801(d)(1)(A) was enacted); Blakey, at 41; 56 F.R.D. at 295-96. These commentators asserted that this reasoning was as sound as the rationale behind the other exclusions and exceptions from the hearsay rule. WEINSTEIN'S, § 801App.01[4] at 18; *compare* Rule 801(d)(1)(C), M.R.Evid., (pretrial identification); Rule 801(d)(2), M.R.Evid., (admissions by party-opponent); Rule 803, M.R.Evid., (allowing exceptions to the hearsay exclusion rule for present sense impression, excited utterance, recorded recollection, etc.); Rule 804, M.R.Evid., (allowing admission of statements by a declarant who is unavailable). Finally, the original proposal was also supported by findings

that prior statements made nearer in time to an incident were more accurate and free from outside influences. McCormick, § 25 1, at 116 & n. 12; Weinstein's, § 801 App.01[4] at 15-16.

¶19 The Commission Comments to Montana Rule 801(d)(l)(A) indicate that Montana relied on the above rationale behind the original federal proposal in enacting this State's rule. The Comments state that the Commission believed cross examination during trial was sufficient to remove such statements from the definition of hearsay and that to require the prior inconsistent statement be made under trial conditions would defeat the usefulness of the rule. Commission Comments to Rule 801(d)(1)(A), M.R.Evid., (citing the Advisory Committee's recommendation, 56 F.R.D. at 295). The Commission also noted as support for the new rule the idea that, regardless of limiting jury instructions, juries tended to consider such evidence substantively anyway. Commission Comments to Rule 801(d)(l)(A), M.R.Evid.

¶20 Regardless of the reasons behind the original federal proposal, the federal legislative history of 801(d)( l)(A), Fed.R.Evid., indicates the additional requirements for the substantive use of prior inconsistent statements, i.e., oath subject to the penalty of perjury at a formal proceeding, were included because of concerns in Congress. Representatives expressed concern about the possibility of convictions based solely on unsworn out-of-court statements which were considered unreliable at common law. Weinstein's, § 801 App.0 1 [5] at 36.1; Blakey, at 21; Kelly A. Kutler, *The Admission of Prior Inconsistent Statements as*

*Substantive Evidence-Commonwealth v. Brady,* 60 Temp. L.Q. 427, 434 n.56 (1986) (now Temp. L.R.). There was also testimony that prior inconsistent statements contained in police reports and insurance claims are unreliable because of the subjective and bias interests of police officers and claims examiners who take such statements. 30B MICHAEL H. GRAHAM, FEDERAL PRACTICE AND PROCEDURE, FEDERAL RULES OF EVIDENCE § 7011, at 116 n. 13 (2000).

¶21    To address congressional concerns, some commentators asserted there was confusion between the issue of admissibility and the issue of sufficiency. Blakey, at 20-22. These commentators argued that the original proposal was only intended to address the issue of admissibility of prior inconsistent statements as substantive evidence and that whether sufficient evidence existed to support a verdict would have to be addressed independently under substantial evidence review. Blakey, at 20-22. Further, the commentators stated that under such review, such a conviction could not stand because of the high burden of the reasonable doubt standard. Blakey, at 21-22. Regardless of the distinction between admissibility and sufficiency, Congress chose to amend and narrow the original proposal to its current version. WEINSTEIN'S, § 801App.01[5] at 36.1.

¶22    After the federal change in rule 801(d)(l)(A), all but nine states modernized from the common law to allow some substantive use of prior inconsistent statements. Jennifer L. Hilliard, Note, *Substantive Admissibility of a Non-party Witness' Prior Inconsistent Statements: Pennsylvania Adopts the Modern View, 32* Vill. L. Rev. 47 1, 489-96 (1987)

[hereinafter Hilliard]. Fourteen states adopted the federal rule verbatim. Hilliard, 492 & n.98. Twenty states, including Montana, adopted the original proposal to allow substantive use of all prior inconsistent statements. Hilliard, 491 & n.94. The remaining states adopted various versions of the federal rule modified to ensure the reliability of the prior inconsistent statements in different ways, Hilliard, 491-96. See Haw.R.Evid. 802. 1( 1) (allowing prior inconsistent statements to serve as substantive evidence if the statement is reduced to a signed writing or electronically recorded, in addition to the statements allowed under Rule 801(d)( 1)(A), Fed.R.Evid.).

**2. The Use of Prior Inconsistent Statements as Substantive Evidence: Sufficiency vs. Reliability.**

¶23    After the modernization of Rule 801 (d)(1)(A), state and federal case law began to struggle with the issue of the sufficiency of prior inconsistent statements as the sole proof supporting a conviction. Sufficiency of evidence is a determination that depends on the facts specific to a case and addresses the question of whether the evidence supports a conviction such that any rational trier of fact could find guilt beyond a reasonable doubt. State *v. Hocevar,* 2000 MT 157, ¶ 23, 300 Mont. 167, ¶ 23, 7 P.3d 329, ¶ 23. When a conviction is supported solely by a prior inconsistent statement, a review of the evidence for sufficiency so as to assess whether any rational trier of fact could find guilt beyond a reasonable doubt inevitably involves a review of the degree of reliability of the prior inconsistent statement. Thus, the reasoning behind using prior inconsistent statements as substantive evidence becomes circular: prior inconsistent statements are admissible as substantive evidence

because cross examination at trial guarantees reliability, but when considered alone such statements must be reviewed to see if they are reliable enough. A recognition of this quandary is apparent in the fact that since the new rules were enacted, state and federal case law has continually turned to a review of the reliability of prior inconsistent statements.

¶24    This paradox was foreshadowed in *California v. Green* (1970), *399* U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489, a case holding that the use of prior inconsistent statements as substantive evidence does not violate the Confrontation Clause of the U.S. Constitution. Justice Harlan's concurring opinion in *Green* asserts that if a case rests entirely on a prior inconsistent statement, the defendant would be entitled to a hearing on the reliability of the statement. *Green, 399* U.S. at 187, 90 S.Ct. at 1950, n.20. See also Stanley A. 'Goldman, *Guilt by Intuition: the Insufficiency of Prior Inconsistent Statements to Convict 65 N.C.* L. Rev. 1 (1986) (criticizing the substantive use of prior inconsistent statements by questioning the reliability of such statements). While there is precedent establishing that convictions based entirely on unreliable evidence cannot stand, *Green, 399* U.S. at 187, 90 S.Ct. at 1950, n.20 (citations omitted), the Court has not addressed the specific issue of whether a prior inconsistent statement as the sole proof of conviction violates other due process rights.

¶25    The Court's later cases indicate that sufficiency of such evidence is completely dependent on its reliability. The Court has held that statements admitted under a residual hearsay exception, rather than a firmly-rooted exception to hearsay, cannot be considered for substantive purposes if the statements do not have adequate indicia of reliability as required

15

under the Confrontation Clause. *Idaho v. Wright* (1990), *497* U.S. 805, I IO S.Ct. 3 139, I I 1 L.Ed.2d 638 *passim* (holding child's pre-trial statements to doctor regarding sexual abuse were not admissible for substantive use). In contrast, the Court has also held that no reliability hearing is necessary for Confrontation Clause purposes for an out-of-court identification admitted under Rule 801 (d)(l)(C), Fed.R.Evid., when the person who made the identification is available at trial for cross examination. *United States v. Owens* (1988), 484 U.S. 554, 560-61, 108 S.Ct. 838, 843, 98 L.Ed.2d *951. See also Ohio v. Roberts* (1980), 448 U.S. 56, 70-73, 100 S.Ct. 2531, 2541-43, 65 L.Ed.2d 597 (holding pre-trial statements admissible as substantive evidence because statements were subject to cross examination when given).

¶26     In federal case law, the issue of sufficiency of a prior inconsistent statement alone was first addressed in *United States v. Orrico* (6th Cir. 1979), 599 F.2d 113. In *Orrico,* a conviction for fraudulent transportation of checks in interstate commerce was reversed based on the rationale that the entire case rested on a prior inconsistent statement and a past recorded recollection which were insufficient to prove guilt beyond a reasonable doubt. *Orrico,* 599 F.2d at 118-19. The entire analysis in the case revolves around the questionable reliability of those statements. *Orrico,* 599 F.2d at 116-17. In contrast, the same circuit found in *United States v. Woods* (6th Cir. 1980), 613 F.2d 629, 637, that the conviction was sufficiently supported by the evidence even though pre-trial testimony before a grand jury apparently was the only direct evidence linking defendant Underwood to the robbery.

*Compare Ticey v. Peters* (7th Cir. 1993) 8 F.3d 498, 503-04 (holding on *habeas corpus* petition that prior inconsistent statements of rape victim were sufficiently reliable as sole support for conviction, even though statements were testified to and paraphrased by the police officer who took statements); *United States v. Bahe* (D.N.M. 1998), 40 F. Supp. 2d 1302 (prior inconsistent statement of niece was insufficient to support conviction for sexual abuse).

¶27    As criminal prosecution of domestic abuse cases has increased, states are more often dealing with the difficultly of the substantive use of prior inconsistent statements. See State *v. Clark* (Haw. 1996), 926 P.2d 194 (holding prior inconsistent statements of domestic abuse victim were sufficient as the sole proof of identity for conviction even though she testified at trial the wounds were self inflicted because she was high on drugs). See *also* Neal A. Hudders, Note, *The Problem of Using Hearsay in Domestic Violence Cases: Is a New Exception the Answer?* 49 Duke L.J. 1041 (2000) (analyzing current and potential exceptions to hearsay for domestic violence cases); Peter R. Dworkin, *Confronting Your Abuser in Oregon: a New Domestic Violence Hearsay Exception,* 37 Willamette L. Rev. 299 (2001) (analyzing constitutionality of Oregon's new hearsay exception that specifically allows substantive admission of domestic abuse reports); Andrea G. Nadel, *Use or Admissibility of Prior Inconsistent Statements of Witness as Substantive Evidence of Facts to Which They Relate in Criminal Case-Modern State Cases,* 30 A.L.R.4th 414 (1984).

¶28    Our review of state case law indicates that appellate courts have inevitably walked

down the path of categorizing particular prior inconsistent statements depending on reliability, in order to determine the sufficiency of evidence. Pennsylvania established a rule similar to Montana's by judicial decision in *Commonwealth* v. *Brady* (Pa. 1986), 507 A.2d 66. This decision has been continually refined and limited to the point that Pennsylvania's rule is now similar to the statutory rule in Hawaii mentioned above. See *Commonwealth* v. *Wilson* (Pa. 1998), 707 A.2d 1114, 1118 (explaining some of the case law refinements since *Brady* and holding prior inconsistent statement must be electronically recorded in order to qualify as substantive evidence).

¶29 Massachusetts has almost approached a case-by-case analysis of convictions based solely on the substantive use of prior inconsistent statements. Prior inconsistent statements given at a probable cause hearing are sufficient to support a conviction alone, but prior inconsistent statements given at a grand jury must be corroborated. *Compare Commonwealth* v. *Clements* (Mass. 2001), 747 N.E.2d 682, 687-88 (grand jury testimony corroborated by pretrial photographic identification admitted under 801(d)(1)(C), Mass.R.Evid.), *rehearing granted by 752 N.E.2d 241 (2001); Commonwealth v. Sineiro* (Mass. 2000), 740 N.E.2d 602, 609-10 (cross-examined probable cause testimony sufficient alone). New Jersey has adopted a fifteen factor test for reviewing the reliability of a prior inconsistent statement, in addition to its statutory rule. *State v. Mancine* (N.J. 1991), 590 A.2d 1107, 111 5.[2] See also *R. T.L. v.*

---

[2] The factors include: (1) the declarant's connection to and interest in the matter reported in the out-of-court statement, (2) the person or persons to whom the statement was given, (3) the place and occasion of giving the statement, (4) whether the declarant

*State* (Fla. 2000), 764 So.2d 871 (prior inconsistent statement insufficient alone); *Nance v. State* (Md. 1993), 629 A.2d 633 (prior inconsistent statement sufficient alone if reliable); *State* v. *Robar* (Vt. 1991), 601 A.2d 1376 (same); *People* v. *Chavies* (Mich. 1999), 593 N.W.2d 655 (prior inconsistent statement may serve as sole basis for conviction; credibility of statement is issue for the jury), *cert. denied,* 531 U.S. 841, 121 S.Ct. 105, 148 L.Ed.2d. 63 (2000); *State* v. *Igoe* (N.D. 1973), 206 N.W.2d 291 (same). While the approach is different in the various jurisdictions, the effect of the modified rules is to narrow the issue of the sufficiency of evidence, and therefore its reliability, either by requiring corroboration or by constraining the admissibility of prior inconsistent statements for use as substantive evidence in the first place,

### 3. The Use of Prior Inconsistent Statements in Montana

¶30    *White Water* was the first Montana case to recognize the sufficiency limitations of using a prior inconsistent statement as the sole substantive evidence.   *White Water,* 194 Mont. at 88-89, 634 P.2d at 638-39. In a trial charging sexual intercourse without consent,

---

was then in custody or otherwise a target of the investigation, (5) the physical and mental condition of the declarant at the time, (6) the presence or absence of other persons, (7) whether the declarant incriminated himself or sought to exculpate himself by his statement, (8) the extent to which the writing is in the declarant's hand, (9) the presence or absence, and the nature of, any interrogation, (10) whether the offered sound recording or writing contains the entirety, or only a portion [or a] summary, of the communication, (11) the presence or absence of any motive to fabricate, (12) the presence or absence of any express or implicit pressures, inducement or coercion for making the statement, (13) whether the anticipated use of the statement was apparent or made known to the declarant, (14) the inherent believability of the statement, and (15) the presence or absence of corroborating evidence. *Mancine, 590* A.2d at 1115.

the victim testified that no penetration occurred. *White Water*, 194 Mont. at 87, 634 P.2d at 637. We affirmed the district court's directed verdict where the only evidence of penetration, an essential element of sexual intercourse without consent, was an unreliable, unsworn, prior inconsistent statement made by the victim and written by the sheriff who interviewed her. *White Water*, 194 Mont. at 87-88, 634 P.2d at 637. We held that a prior inconsistent statement admitted as substantive evidence under Rule 801(d)(1)(A), M.R.Evid., although admissible, is insufficient by itself to support a conviction without corroboration by independent evidence. *White Water*, 194 Mont. at 88-89, 634 P.2d at 638-39. See also *Jolly*, 112 Mont at 355-56, 116 P.2d at 687-88 (before current Rule 801(d)(l)(A) was enacted, finding prior inconsistent statement substantive evidence, but insufficient to convict).

¶31    We based our holding in *White* Water on the reasoning that a rational juror could not likely be convinced beyond a reasonable doubt based solely on a prior inconsistent statement. *White Water*, 194 Mont. at 89, 634 P.2d at 639. We emphasized the insufficiency of such evidence by noting that if "the entire case for the prosecution was a prior inconsistent unsworn statement it would be difficult indeed to see how [a judge] could avoid directing a verdict." *White Water*, 194 Mont. at 89-90, 634 P.2d at 639. However, the paradox discussed above between admissibility and sufficiency was realized in *White Water* because the reasoning in *White Water* is wholly based on an analysis of the questionable reliability of the prior inconsistent statement of the victim. White *Water*, 194 Mont. at 89-90, 634 P.2d at 639. We held the directed verdict was appropriate because the unreliability of the victim's

statement made conviction beyond a reasonable doubt impossible. Further, in reaching our holding in *White Water,* we relied on the concerns expressed in the legislative history which resulted in the current federal rule, a rule which would have prohibited the substantive use of the victim's statements in White Water. *White Water,* 194 Mont. at 88-90, 634 P.2d at 638-39 (quoting legislative history and commentary discussed in Blakey, at 21-22).

¶32 Our focus on the reliability of the victim's prior inconsistent statement in *White Water* left open the possibility that some types of *reliable* or *sworn* prior inconsistent statements could be used as the sole basis for conviction and that only *unreliable* or *unsworn* prior inconsistent statements required corroboration. In *State v. Stringer* (1995), 271 Mont. 367, 382, 897 P.2d 1063, 1072, a domestic abuse case similar to the case at bar, the victim denied an assault even occurred when questioned at trial. We determined her prior inconsistent statements were more reliable than those in *White Water* because the victim wrote and signed the statements herself the day after the assault. *Stringer,* 271 Mont. at 382, 897 P.2d at 1072.

¶33 This holding could be interpreted to mean that we drew a distinction between reliable and unreliable prior inconsistent statements and intended to allow similarly reliable prior inconsistent statements to serve as the sole basis for conviction. However, this interpretation of *Stringer* ignores our fundamental concern about the questionable reliability of prior inconsistent statements and ignores the fact that, in *Stringer,* the victim's prior inconsistent statements were corroborated by other evidence. The corroboration included photographs

21

of her injuries, observations by the police who arrived shortly after the incident, and statements of the victim's children to the police. *Stringer, 271* Mont. at 382, 897 P.2d at *1072.*

¶34    The above review of the issue of sufficiency of the evidence when a conviction is based on a prior inconsistent statement alone demonstrates that sufficiency is dependent on the reliability of that statement. We decline to continue down the path of analyzing the reliability of each and every type of prior inconsistent statement as many states have done. Rather, in order to create a clear, bright-line rule for trial courts and practitioners, we reaffirm our holdings in *White Water* and in *Gommenginger* that require prior inconsistent statements admitted as substantive evidence of guilt be corroborated in order to sustain a conviction. In doing so, we are in line with states that use this approach to address sufficiency when a conviction is based on a prior inconsistent statement. See *State v.* Moore (Fla. 1986), 485 So.2d 1279, 1281 (finding that the risk of convicting an innocent person is too great where a prior inconsistent statement was sole substantive evidence); *Brower* v. *State* (Alaska 1986), 728 P.2d 645. We also clarify *White Wafer* and *Stringer* to make clear that prior inconsistent statements admitted at trial pursuant to Rule 801(d)(1)(A), M.R.Evid., as substantive evidence must be corroborated by other evidence, even if those prior statements seem as reliable as those in *Stringer.*

¶35    Judge Learned Hand's statement in *Di Carlo v. United States* is often cited in support of allowing prior inconsistent statements to be used as substantive evidence. *Di Carlo v.*

22

*United States* (2d Cir. 1925), 6 F.2d 364, 368. He stated that "[i]f, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less [sic] deciding from what they see and hear of that person and in court." *Di* Carlo, 6 F.2d at 368. However, this rationale only addresses the credibility a jury gives to one witness. It does not address whether the out-of-court statement is so reliable it supports guilt beyond a reasonable doubt. See *Di Carlo,* 6 F.2d at 365 (beginning discussion of that case by stating that "no question is raised of the sufficiency of the proof"). Therefore, we conclude that requiring corroboration is the best way to ensure that the variations in the reliability of such statements are addressed in a way that can support a conviction beyond a reasonable doubt.

¶36     The State argues here that, following *Stringer,* Deborah's prior inconsistent statements should be considered reliable and sufficient as the sole basis for identifying Giant as the assailant because her prior statements were consistent with the physical evidence, three of her statements were given right after the incident, at least one was tape-recorded, and the statement submitted to the District Court on the issue of bail reduction was notarized.[3] However, as clarified above, *Stringer* does not support this assertion because the victim's prior statement that an assault had actually occurred--the issue in dispute in that case--was corroborated by independent evidence. Therefore, Deborah's prior inconsistent statements must be corroborated by independent evidence of Giant's identity as the assailant for the

---

[3] Only certain portions of this statement were read aloud in court. The entire statement was not admitted as evidence and was not submitted to the jury.

denial of directed verdict to stand.

¶37    In that regard, we note that much of the evidence presented at trial goes to the reliability of each of Deborah's statements. For example, in order to reinforce the credibility of the prior statements, the State attempted to show that Deborah stopped cooperating with the County Attorney's office when Giant was released on bail and also attempted to show that Deborah asked that the case be dismissed after her divorce proceedings were voluntarily dismissed. However, this evidence only affects the reliability of the prior inconsistent statements; none of this evidence independently corroborates the statements. Therefore, Deborah's prior statements alone are insufficient as a matter of law to support Giant's conviction.

## B. Flight Evidence

¶38    This brings us to the issue presented in this case: can evidence of flight be the sole corroboration of prior inconsistent statements? As mentioned above, we have held that flight evidence cannot be the sole basis of guilt. *Hall,* ¶ 47.   The rationale behind this rule lies in the fact that evidence of flight without any other evidence can be as consistent with innocence as it is with guilt. In *Wong Sun v. United States* (1963), *371 U.S. 471,484, 83* S.Ct. 407, 415, 9 L.Ed.2d 441, a case holding evidence of flight alone insufficient for probable cause, the Supreme Court stated "we have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." *Wong Sun* quoted *Alberty v. United States* and reaffirmed the following reasoning:

> [I]t is not universally true that a man who is conscious that he has done a

wrong "will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right, and proper," since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that "the wicked flee when no man pursueth, but the righteous are as bold as a lion."

*Wong* Sun, 371 U.S. at 484, 83 S.Ct. at 415 (quoting *Alberty v. United States* (1896), 162 U.S. 499, 511, 16 S.Ct. 864, 868, 40 L.Ed. 1051). The Court in *Alberty* reversed jury instructions that created a presumption of guilt if the elements of a crime were established and there was evidence of flight by the defendant. *Alberty,* 162 U.S. at 5 11, 16 S.Ct. at 868, 40 L.Ed. 1051; *see also Bonning,* 60 Mont. at *364-65,* 199 P. at *275; Hickory v. United States* (1896), 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474. Further, in order to avoid the court making an unnecessary comment on the evidence, a separate jury instruction on flight evidence should not be given. *Hall,* ¶ 45. Therefore, because evidence of flight by itself is as consistent with innocence as it is with guilt, we reaffirm our precedent that flight by itself is insufficient as a matter of law to support a conviction,

## C. Flight and Prior Inconsistent Statements

¶39     Having reviewed both forms of evidence and having pointed out the inherent weaknesses in each, we now reach the question of whether evidence of flight is sufficient to corroborate prior inconsistent statements admitted as substantive evidence of guilt. We conclude that the answer to this question must be, "No." Holding that two forms of evidence, each unreliable in its own right, nonetheless, when taken together, are sufficient to prove guilt beyond a reasonable doubt, accords the sum of the evidence a characteristic

trustworthiness that neither of its constituent parts possesses. Simply put, zero and zero cannot make one. Therefore, we hold, as a matter of law, that evidence of flight cannot be the sole corroboration of a prior inconsistent statement admitted as substantive evidence of guilt.

¶40 We now turn to apply this rule to the instant case. Here, Deborah's prior inconsistent statements and Giant's flight implicate him as the assailant. Deborah's prior inconsistent statements require corroboration because Deborah refused to identify Giant as the assailant at trial. Because of the divorce and Giant's possible fear of being falsely accused, Giant's flight is as consistent with innocence as it is with guilt. The remaining evidence in this case consists of the physical evidence recovered from the home and the photographs of Deborah's injury. This evidence., which would normally be sufficient corroborating evidence, is insufficient in this case because it does not corroborate the essential element of identity needed because Deborah identified another possible assailant.

**CONCLUSION**

¶41 Because all the evidence identifying Giant as the assailant--Deborah's prior inconsistent statements and Giant's flight--is insufficient as a matter of law, the District Court's denial of Giant's motion for a directed verdict is reversed.

¶42 Reversed and remanded to the District Court for entry of an order granting Giant's motion for a directed verdict and for a verdict of acquittal.

_____
Justice

26

**We** Concur:

_____
Chief   Justice

*Patricia Cotter*

*Jim Rice*

*W. William Leaphart*

_____
Justices

Chief Justice Karla M. Gray, dissenting,

¶43 Notwithstanding my agreement with virtually everything in the first 37 paragraphs of the Court's 42-paragraph opinion, I respectfully dissent from that opinion. In doing so, it is important to state without equivocation my total agreement that, under our jurisprudence, a criminal conviction cannot be sustained where the only evidence of an essential element of the offense is a prior inconsistent statement. I also agree that evidence of flight is not sufficient on a stand-alone basis to prove guilt.

¶44 Having agreed with those basic principles at issue here, I observe that, while much of the Court's discussion is of interest from an intellectual standpoint, little of it bears on the issue presently before us. Indeed, the only pertinent facts in ¶¶ 16 though 22 of the Court's opinion are that, under Rule 801(d)(1)(A), M.R.Evid., prior inconsistent statements are not hearsay in this state and may be admitted as substantive, direct evidence. It is difficult to discern the reason for the rest of the Court's lengthy discussion in these paragraphs, except that it may indicate the Court's displeasure with the Montana rule. Nonetheless, Rule 801(d)(1)(A), M.R.Evid., is our Rule and it--rather than the federal rule, concerns of "commentators" or different approaches in other states--is at issue here.

¶45 Similarly, the Court's discussion of the "reliability" question in federal case law and other jurisdictions at ¶¶ 23 through 29, insofar as it relates to prior inconsistent statements *as* the *sole evidence* of an element of a criminal offense, is largely extraneous. This Court's jurisprudence on the issue is contained in *White Water,* and that principle is that a criminal

28

conviction cannot be sustained where the only evidence of some essential element of the crime is a prior inconsistent statement, because such a statement generally is unsworn. As to the Court's lengthy discussion of both other jurisdictions' case law and *White* Water in this regard, it is based on the premise that the prior inconsistent statements are the only evidence of an element of the charged offense. That is not the situation in the present case.

¶46 Simply stated, the prosecution in this case presented substantial evidence identifying Giant as the assailant. As the Court states, Deborah's multiple prior statements to that effect are direct and substantive evidence of the identity of her assailant. While that evidence standing alone--that is, without corroboration--is insufficient to go to the jury on the identity element of the charged offense, the prosecution also presented circumstantial evidence on the identity element via the flight evidence. On the basis of that evidence, the District Court denied Giant's motion for a directed verdict and allowed the case to go to the jury, which convicted Giant. On this record, and under this Court's jurisprudence, I would affirm the District Court.

¶47 The fact is that Giant does not present the "reliability" question in the broad context in which the Court ultimately decides it. Instead, Giant first argues on appeal that, under *White* Water, Deborah's prior inconsistent statements cannot be the sole evidence on which the jury could be allowed to determine that Giant was her assailant because the prior statements were unsworn. Under this Court's cases, his argument is correct and I join the Court in so concluding.

29

¶48    Giant's second argument is that the State's flight evidence here is so "tenuous" that it is insufficient to corroborate Deborah's prior inconsistent statements because flight evidence can be consistent with either guilt or innocence. The argument is based on Giant's contention that the only flight evidence is that he went "to his parents in California right after the assault." His argument does not raise the question the Court states is the issue presented in this case of whether flight evidence can be the sole corroboration of prior inconsistent statements.

¶49    In any event, the Court does not agree with Giant's premise, namely, the "tenuous" nature of the flight evidence, and neither do I. Indeed, the Court states that the following "evidence of flight is undisputed[:]"

> Giant was preparing to leave town when he withdrew all available cash from the couple's savings accounts and credit cards and took the two younger boys, D. and M., to a hotel. The night of the assault, Giant kept the money and left the house. Later, Giant abandoned his truck with the license plates inside. Richardson contacted Giant on his cell phone five days after the assault and asked Giant to turn himself in. Giant refused and would not say where he was. Giant was at large for four months. When Giant turned himself in, he said he was tired of running.

This is significant and substantial flight evidence which, although circumstantial evidence going to Giant's identity as Deborah's assailant, corroborates her prior inconsistent statements as required by our cases.

¶50    The Court having implicitly rejected Giant's argument that the flight evidence is "tenuous," it is my view that the remainder of his argument, that the evidence is insufficient to corroborate Deborah's prior inconsistent statements, also must be rejected. At that point,

30

our analysis having covered Giant's arguments on appeal, we should affirm the District Court's denial of Giant's motion for a directed verdict. That our case law properly holds flight evidence can be consistent with innocence as well as guilt means only that it is insufficient on a stand-alone basis to support a conviction. Here, as corroboration of Deborah's statements, ii: creates a jury question, and the same is true regarding the weight and credibility to be given Deborah's direct and substantive evidence--via her numerous prior inconsistent statements--identifying Giant as her assailant.

¶51    In this latter regard, it is important to keep in mind the extent and timing of Deborah's prior statements--inconsistent with her later trial testimony--about the June 5, 1998, assault. As the Court mentions, Deborah testified she possibly told a doctor at the hospital almost immediately after the assault that Giant was her assailant. In addition, her undisputed testimony was that she told doctors at the hospital the following day that her "husband did it." That same day, she told police that Giant was her assailant. Aside from the "insufficient standing alone" issue, these statements made nearer in time to the incident could be considered by the jury to be more accurate and free from outside influences than those made later.   Indeed, according to McCORMICK, § 25 1, 116 n. 12, "[t]he fresher the memory, the fuller and more accurate it is." It is my view that, because they were corroborated by substantial flight evidence, the jury was entitled to weigh Deborah's prior statements, together with her trial testimony and credibility, and find beyond a reasonable doubt that Giant was the assailant.

31

¶52     My view is strengthened by an additional prior inconsistent statement of Deborah's mentioned only in passing by the Court as one "only certain portions of which were read aloud." It is true that Deborah read only certain portions of this additional statement during her testimony, admitting she swore to the statement before a notary; it is somewhat misleading, however, for the Court to omit the substance of these statements and the time frame in which they were made. Unlike the statements made so soon after the assault, Deborah made the following statements on December 18, 1998, more than six months after the assault:

> Ed [Giant] committed an extremely violent and near fatal act on me on June 5, 1998.

> He planned it out for a week and had everything organized to carry out his plan to kill me.

Again, these numerous statements by Deborah, made to different people at significantly different times, are insufficient on a stand-alone basis to establish the identity element of the offense with which Giant was charged. Taken together with the substantial corroborating evidence of flight, however, it strikes me as beyond dispute that the evidence was sufficient to withstand a motion for a directed verdict which was based on insufficient evidence of the identity of Deborah's assailant.

¶53     As Judge Learned Hand said in *Di Carlo,* "[i]f from all that the jury see of the witness, they conclude that what [s]he says now is not the truth, but what [s]he said before, they are none the less deciding from what they see and hear of that person and in court." That is what

*32*

the jury in this case determined with regard to Deborah's trial testimony and her statements at earlier times, respectively, and--together with the substantial flight evidence--it is what the jury had a right to do after the District Court properly denied the motion for a directed verdict. Ignoring Giant's actual arguments on appeal, the Court instead turns jury credibility and weight questions into a question of law, *sua sponte* and without any citation to authority, and concludes that all of the evidence of identity--taken together--was so inherently unreliable as to be insufficient to allow the case to go to the jury.

¶54    Moreover, the Court's "zero and zero cannot make one" statement is insupportable on this record. There are no "zeroes" here. The Court simply disregards the fact that both direct and substantive evidence from Deborah near the time of the assault and later, and substantial flight evidence from Giant's own conduct immediately after the assault, were presented by the prosecution.

¶55    I could not disagree more strongly with the Court's approach and result in this case. I dissent.

_____
Chief Justice

Justice Jim Rice joins in the foregoing dissenting opinion.

_____
Justice