No. 81-112

IN THE SUPREME COURT OF THE STATE OF MONTANA

_____

THE STATE OF MONTANA,

Plaintiff and Appellant,

vs.

FLOYD WAYNE WHITE WATER,

Defendant and Respondent.

_____

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Lake.
Honorable John Henson, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Richard P. Heinz, County Attorney, Polson, Montana

For Respondent:

K. M. Bridenstine, Polson, Montana

_____

Submitted on briefs: June 10, 1981

Decided: October 13, 1981

Filed: OCT 13 1981

_Thomas J. Kearney_
_____
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The State appeals an order by the Lake County District Court dismissing a charge of sexual intercourse without consent. The State's principal evidence against the defendant consisted of a statement allegedly made by the complaining witness shortly after the alleged crime. At trial, the complaining witness disputed the accuracy of that statement by giving a different version of the facts. The District Court dismissed the charge at the end of the State's case on the ground that there was insufficient evidence to support a conviction. The sole issue on appeal is whether in a criminal case an alleged prior inconsistent statement should be submitted to the jury for consideration as substantive evidence of an essential element of the charged crime where the accuracy of that statement is repudiated at trial.

The defendant, Floyd Wayne White Water, was charged by information on January 22, 1980, with the offense of sexual intercourse without consent arising from an incident involving his former stepdaughter, Rhonda Rene Simmons a/k/a Rhonda White Water, age 15 at the time of this incident. The defendant had been recently divorced from Rhonda's mother, Belva White Water, but sporadically continued to live in Belva's home. Early in the morning on December 14, 1979, Rhonda awakened the defendant and then went into the kitchen to warm herself near a wood stove. The defendant soon joined her, but what occurred at this point is in dispute. Shortly after the defendant joined Rhonda in the kitchen, Rhonda's mother, Belva, entered the room and saw the defendant with his hand in Rhonda's underwear.

Later that day Belva reported to the Lake County Attorney's Office that the defendant had been sexually

molesting her daughter. Rhonda, who has a learning disability, was taken from the special high school she attended in Dixon, Montana, and was transported to the Lake County Sheriff's Office. In the presence of the sheriff and a social worker, Rhonda was interviewed and a statement was taken by the sheriff in his own handwriting. According to that statement, the defendant had joined Rhonda near the woodstove, placed his hand down the back of her pants, and then moved his hand around to the front and penetrated her vagina with his finger.

The defendant's jury trial on the charge of sexual intercourse without consent began on December 8, 1980. Belva White Water testified that she did not know the actual contents of the sheriff's statement until the first day of trial, and that when she had entered the kitchen she saw only that the defendant had his hand down the back of Rhonda's underwear.

Rhonda testified at trial that she was not satisfied with the sheriff's statement because she felt the sheriff "did not understand . . . [what she told him, and] twisted . . . [her statements] around a little bit here and there." She stated that the defendant had placed his hand on her "butt" next to her skin and then removed it when her mother entered the room.

At the close of all the evidence the District Court dismissed the information because the statement provided by the sheriff was the only evidence upon which a conviction could be based, and that Rhonda had repudiated that version of the facts. Without that statement, the essential element of penetration could not be proven in support of a charge of

sexual intercourse without consent. See, section 45-5-503, MCA, and section 45-2-101(55), MCA.

The State appeals that dismissal, contending that the statement provided by the sheriff was properly admissible for impeachment purposes, and therefore, it should have been submitted to the jurors for their consideration as substantive evidence. The State's position is that the jury should have been allowed to consider both statements and decide which to believe. The State further contends that this prior inconsistent statement alone is sufficient to support a conviction.

We find that the dismissal was properly granted. The motion for dismissal in criminal cases is often referred to as a motion to acquit or a motion for a directed verdict. State v. French (1975), 166 Mont. 196, 531 P.2d 373. In Montana, the decision whether to grant or deny a motion to dismiss at the close of the State's case lies within the sound discretion of the trial court (section 46-16-403, MCA) and will be disturbed on appeal only when abuse of that discretion is shown. State v. Smith (1980), _____ Mont. _____, 609 P.2d 696, 698, 37 St.Rep. 583, 586. Further, a directed verdict should only be granted where there is no evidence upon which the jury could base a verdict; that is, the defendant is entitled to an acquittal if reasonable men could not conclude from the evidence taken in a light most favorable to the prosecution that guilt has been proved beyond a reasonable doubt. State v. Perez (1952), 126 Mont. 15, 243 P.2d 309.

Although determining the reliability of a prior inconsistent statement is a matter within the trial judge's discretion, he must nonetheless view the situation in light most favorable to the prosecution. Here, the statement

-4-

allegedly taken from Rhonda Simmons, a girl with a learning disability, was in the form of a document written by the sheriff who had interviewed her. The record reveals that Rhonda is somewhat susceptible to agree with suggestions made to her when she cannot clearly verbalize her thoughts. Although the interview was not recorded in any other manner, a social worker witnessed it and testified that she heard Rhonda make the statements to the sheriff. At trial and under oath, however, Rhonda denied the veracity of the prior, unsworn statement which the sheriff made in her behalf.

In Montana, "sexual intercourse means penetration of the vulva, anus, or mouth of one person by the penis of another person, <u>penetration of the vulva or anus of one person by any body member of another person</u>, or penetration of the vulva or anus of one person by any foreign instrument or object manipulated by another person for the purpose of arousing or gratifying the sexual desire of either party." Section 45-2-101(55), MCA. (Emphasis added.) Without Rhonda's testimony, there is no evidence of one essential element of the offense of sexual intercourse without consent: penetration. And there are no other credible witnesses to establish that element. Belva White Water stated under oath at trial that she had no knowledge of whether penetration had indeed occurred--all she saw upon entering the kitchen was that the defendant removed his hand from Rhonda's underwear. The statement from Rhonda taken by the sheriff was not one made under oath. Although the interview was witnessed by a state-employed social worker, who agreed with the sheriff's version of Rhonda's statement, the circumstances under which this prior statement was made tend to indicate its probable

-5-

unreliability. An unreliable prior inconsistent statement should not be the sole, substantive evidence upon which a jury should be allowed to base guilt.

Rule 801(d)(1)(A), Mont.R.Evid., provides that a prior inconsistent statement by a witness will not be inadmissible as hearsay so long as the witness testifies at trial and is subject to cross-examination. The Commission Comment to this rule unequivocally explains that an admissible prior inconsistent statement constitutes substantive evidence. Although Montana's Rule 801(d)(1)(A) differs from the federal rule from which it was derived, the Advisory Committee's Note to the federal rule (see 56 F.R.D. 183, 296) also indicates that prior inconsistent statements are intended to be considered as substantive evidence, stating that:

> "In many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation. The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court. Moreover, [it] will provide a party with desirable protection against the 'turncoat' witness who changes his story on the stand and deprives the party calling him of evidence essential to his case."

Before Congress passed federal Rule 801(d)(1)(A), concern was expressed that this rule might permit convictions to be obtained solely on the basis of evidence of prior inconsistent statements. In a footnote to Senate Committee Report No. 1277, 93d Cong., 2d Sess., at 16, n. 21, it was stated:

> "It would appear that some of the opposition to this Rule is based on a concern that a

person could be convicted solely upon evidence admissable under this Rule. The Rule, however, is not addressed to the question of the sufficiency of evidence to send a case to the jury, but merely as to its admissability. Factual circumstances could well arise where, if this were the sole evidence, dismissal would be appropriate."

We believe, furthermore, that a conviction supported only by a prior inconsistent statement should not be allowed to stand. Weinstein and Berger in their Commentary on the Rules of Evidence state "[i]t is doubtful that in any but the most unusual case, a prior inconsistent statement alone will suffice to support a conviction since it is unlikely that a reasonable juror could be convinced beyond a reasonable doubt by such evidence alone." 4 Weinstein's Evidence n. 53, at 801-73 (1975). The reporter for the Advisory Committee that drafted Rule 801(d)(1)(A) stated in a letter to a House subcommittee that ". . . if a judge were confronted with a situation . . . in which the entire case for the prosecution was a prior inconsistent unsworn statement it would be difficult indeed to see how he could avoid directing a verdict." Blakey, Substantive Use of Prior Inconsistent Statements Under the Federal Rules of Evidence, 64 Ky.L.J. 3, 21 (1975).

In addition to this sufficiency limitation imposed by Rule 801(d)(1)(A), such evidence may be barred by due process considerations regarding the reliability of the evidence. In California v. Green (1970), 399 U.S. 149, 163-64, n. 15, 90 S.Ct. 1930, 1938, n. 15, 26 L.Ed.2d 489, 500, n. 15, the United States Supreme Court stated that due process considerations may prevent convictions where a reliable evidentiary basis is totally lacking. And, in Bridges v. Wixon (1945), 326 U.S. 135, 153-54, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103, 2115, the United States Supreme Court warned against allowing "men to be convicted on the unsworn testimony

-7-

of witnesses—a practice which runs counter to the notions of fairness on which our legal system is founded." Bridges involved a witness' statements received as substantive evidence in a deportation proceeding although the statements were no more than a stenographer's notes of an investigative interview. The person alleged to have made the statements denied their accuracy. The Supreme Court ruled that these statements were received in error because they had not been recorded under oath as required by the regulations of the Immigration and Naturalization Service.

We also note that here a man's liberty is at stake, but the evidence tending to establish his guilt is unreliable, even when viewed in a light most favorable to the prosecution. The question is not whether one sort of statement carries a greater indicia of reliability than another, but rather, whether the circumstances pursuant to which the prior statement was given, coupled with the present availability of the witness for observation and cross-examination under oath, provide sufficient reliability for admitting that statement as substantive evidence. Here, the circumstances are so questionable they require that we affirm the trial court's dismissal. Although the evidence might seem to support a charge of sexual assault, that charge was not brought against the defendant, and double jeopardy provisions of the federal and Montana Constitutions prevent such a charge from now being filed.

The order of the District Court granting the dismissal is affirmed.

_____
                                              Justice

-8-

We Concur:

_Frank A Haswell_
Chief Justice


_John Conway Harrison_

_Frank B Morrison_

_John C Sheehy_
Justices