FILED

12/02/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0528

DA 23-0528

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 280

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROBERT DAN FRENCH,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC-19-280
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Tammy A. Hinderman, Appellate Defender Division Administrator,
Jeff N. Wilson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Mardell Ployhar,
Assistant Attorney General, Helena, Montana

            Joshua Racki, Cascade County Attorney, Ashlee Kummer, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  July 23, 2025

Decided:  December 2, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Robert Dan French appeals the Eighth Judicial District Court's denial of his motion to dismiss one of three jury convictions for sexual offenses against minors. He also appeals the District Court's denial of his motion for a new trial based on jury selection errors. We address the following issues:

1. *Whether the District Court properly denied French's motion to dismiss because there was sufficient corroborating evidence to support the victim's prior inconsistent statements.*

2. *Whether French is entitled to a new trial because the District Court did not substantially comply with the jury selection statute.*

¶2     We affirm the District Court on both issues.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     In August and September of 2018, three girls came forward alleging that Robert Dan French had touched them inappropriately. In May 2019, the State charged French by information with two counts of sexual intercourse without consent and one count of sexual assault. The case was tried to a Cascade County jury in April 2022.

¶4     In the years leading up to 2018, French lived with his long-term girlfriend, Tammy; their three children; and Tammy's grandmother, Betty. Betty had significant health problems and needed in-home medical care. In 2018, a caregiver for Betty would bring her daughter to hang out with French and Tammy's three boys while she provided care. The daughter, A.M., testified at trial that on multiple occasions, French placed his hands under her clothes and touched her vagina while her mother was in the bedroom tending to Betty. A.M. was twelve when she testified.

2

¶5    For several years prior to A.M.'s encounters with French, similar incidents had happened to K.E.. K.E.'s mother and Tammy were good friends, and K.E. spent many nights at Tammy and French's home. At trial, a fifteen-year-old K.E. testified that during those times, French came into the room in which she slept and touched and penetrated her vagina with his fingers. K.E. could not remember when French had begun touching her inappropriately, but she remembered telling her mom sometime in 2015 when she was nine and that French had stopped when she was twelve.

¶6    In the summer of 2018 and before A.M. and K.E had disclosed their abuse, a four-year-old K.K. spent a night at French and Tammy's home. K.K.'s mother worked as a child protection specialist and also served with the Army Reserves. Her father, a truck driver, worked sporadic hours. As part of her service with the Army Reserves, K.K.'s mother "drilled" on the weekends and had annual training. K.K. spent the night of August 24 with French and Tammy while K.K.'s mother was at a two-week annual Army Reserve training and her father was working.

¶7    K.K.'s father testified that on August 25, 2018—the evening K.K. arrived home from French and Tammy's home—K.K. said to him that "last night was weird" and that the "dad out there put his front butt in my mouth." K.K.'s father "blew up" and called K.K.'s mother. K.K.'s mother spoke with her commander and left her training a day early. K.K.'s parents called law enforcement just after midnight on August 26, 2018.

¶8    K.K. was forensically interviewed within days after her parents reported her abuse and again a few days later. At these first two interviews, K.K. was extremely uncomfortable, did not disclose any abuse, and spoke in a whisper repeating, "I don't

3

know." When the forensic interviewer asked why she didn't know, K.K. responded, "scared."

¶9 In June of 2019, K.K. and her mother were driving when K.K., without prompting, said French had "peed in her mouth." K.K.'s mother relayed the information to law enforcement, who then scheduled another forensic interview. During this interview, K.K. described what French had done to her. She stated that she was sleeping in the living room when French "did a bad thing" and "put his part where he pees in [her] mouth." She explained that Tammy was sleeping on a chair next to her, French had been sleeping on the couch, and two boys were sleeping in another room. K.K. recalled that she turned her head the other way and ducked down to stop French, and he attempted to move her head back up. She demonstrated the movement as she explained the events.

¶10 When asked what it felt like when French tried to put his "part" in her mouth, she described it as "like bugs in [her] mouth," specifically a millipede or a bug with a lot of legs. She recalled that she told her dad about the incident the next day, who then told her mother. She said that the incident made her feel mad and angry.

¶11 K.K. made another statement to her mother in March 2021. K.K. was in the shower when she said, "[T]hat's what it feels like when a boy tries to put his penis down there." K.K.'s mother asked what she meant by her statement and said nobody should be putting anything down there. To this, K.K. replied, "except Robert."

¶12 At trial, K.K. stated she didn't know why she was there and struggled to answer questions. Most of her responses were "I don't know" or single word answers. She did

4

not recall her forensic interview or what she told her father. The District Court permitted the State to play a portion of the 2019 forensic interview video for the jury.

¶13 After the State's case-in-chief, French moved to dismiss the charge of sexual intercourse without consent involving K.K.. French argued there was insufficient evidence because the State's conviction relied solely on K.K.'s prior inconsistent statements. The District Court denied French's motion. It reasoned that—although thin—the State had presented corroborative evidence supporting K.K.'s inconsistent statements. The District Court identified the parents' testimony of K.K.'s reports to them, K.K.'s reports being made after spending the night at French and Tammy's house, and K.K.'s demeanor as corroborative evidence. The Cascade County jury convicted French of all three counts on April 27, 2022.[1]

¶14 Nearly a year and half later, French filed a motion for new trial, claiming that the District Court had not followed the jury selection process required under § 3-15-405, MCA (2023), and, in the interest of justice, a new trial was necessary. With his motion, French attached a transcript from *State v. Hinkle*, No. BDC-22-242 (Mont. Eighth Judicial Dist. filed Aug. 22, 2023), which contained testimony from Cascade County's sheriff and clerk of court.

¶15 In *Hinkle*, Cascade County's clerk and sheriff testified about the District Court's jury notification process. Since 2020, the clerk had not consistently certified the list of non-responders to the sheriff for personal service of notice, and the *Hinkle* court vacated

---

[1] Except for his jury selection argument, discussed below, French does not challenge the jury's verdict on the other two counts.

its upcoming jury calendar to resolve the error. The District Court denied French's motion after concluding that it was untimely and that he had not presented evidence that his jury panel was not a fair cross-section of his community or that his trial was in some way skewed due to the jury selection process.

## STANDARDS OF REVIEW

¶16 Whether sufficient evidence supports a conviction is an application of law to fact, which we review de novo. *City of Helena v. Strobel*, 2017 MT 55, ¶ 8, 387 Mont. 17, 390 P.3d 921 (citation omitted). Sufficient evidence exists when "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Strobel*, ¶ 8 (citing *State v. Spottedbear*, 2016 MT 243, ¶ 8, 385 Mont. 68, 380 P.3d 810). "We review for abuse of discretion a district court's denial of a motion for a new trial and its evidentiary rulings." *State v. Hillious*, 2025 MT 53, ¶ 13, 421 Mont. 72, 565 P.3d 1218 (citation omitted).

## DISCUSSION

¶17 *1. Whether the District Court properly denied French's motion to dismiss because there was sufficient corroborating evidence to support the victim's prior inconsistent statements.*

¶18 To convict for sexual intercourse without consent, there must be proof that the defendant "knowingly ha[d] sexual intercourse with another person without consent or with another person who is incapable of consent." Section 45-5-503, MCA. Sexual intercourse is "any penetration, however slight," of the "vulva, anus, or mouth of one person by the penis of another person [or] penetration of the vulva or anus of one person by a body

6

member of another." Section 45-2-101(68), MCA.  Sufficient evidence must support each element of the offense.  *Spottedbear*, ¶ 23 (citation omitted).

¶19    A trial court may dismiss charges for insufficient evidence.  Section 46-16-403, MCA.  "To succeed on a motion to dismiss for insufficient evidence, a defendant must show that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not find the essential elements of the crime beyond a reasonable doubt." *State v. Ohl*, 2022 MT 241, ¶ 8, 411 Mont. 52, 521 P.3d 759 (citations omitted).  In other words, the defendant must prove "that the prosecution has failed as a matter of law to prove the charges beyond a reasonable doubt."  *State v. Dulaney*, 2025 MT 67, ¶ 48, 421 Mont. 251, 566 P.3d 534 (citations omitted).  French argues that the sole evidence establishing penetration—an essential component of the definition of sexual intercourse—is K.K.'s prior inconsistent statements to her parents and the forensic interviewer.  He claims that because her statements are not corroborated, they are insufficient to sustain his conviction of sexual intercourse without consent.

¶20    Under the Montana Rules of Evidence, a prior inconsistent statement may be admitted as substantive evidence.  M. R. Evid. 801(d)(1)(A).  A prior inconsistent statement is sufficient evidence to prove an essential element of the crime so long as it is supported by corroborative evidence.  *State v. Dineen*, 2020 MT 193, ¶ 12, 400 Mont. 461, 469 P.3d 122 (citing *Strobel*, ¶ 11).  "'Corroborative evidence' is additional evidence of a different character on the same point."  Section 26-1-102, MCA.

¶21    Corroborative evidence supporting a prior inconsistent statement is not without limitation.  In *State v. Giant*, 2001 MT 245, 307 Mont. 74, 37 P.3d 49, Deborah Giant was

7

assaulted in her home from behind. The attacker beat her on the face, choked her, and stabbed her in the arm with an ice pick. *Giant*, ¶ 3. She identified her husband Edward Giant III as the assailant to hospital staff and law enforcement. *Giant*, ¶¶ 3-4. She also told police that on the night of the assault, Giant took their two sons to a hotel, withdrew their entire savings, and took cash advances from all their credit cards. *Giant*, ¶ 4. At trial, Deborah maintained the above sequence of events but identified her son as the assailant instead of Giant. *Giant*, ¶ 6. The State argued that the evidence of Giant's flight was sufficient to corroborate Deborah's prior inconsistent statements identifying him as the assailant. *Giant*, ¶ 8.

¶22 This Court disagreed, reasoning that because it had previously held evidence of flight alone insufficient to establish guilt beyond a reasonable doubt, it was also insufficient as the sole corroborative evidence supporting the witness's prior inconsistent statement. *Giant*, ¶¶ 13, 38-39. "Deborah's prior inconsistent statements and Giant's flight ma[d]e up the only evidence against Giant on the essential element of the identity of the assailant." *Giant*, ¶ 15. The Court explained, "Holding that two forms of evidence, each unreliable in its own right, . . . when taken together, are sufficient to prove guilt beyond a reasonable doubt, accords the sum of evidence a characteristic trustworthiness that neither of its constituent parts possesses." *Giant*, ¶ 39. *Giant* concluded that because prior inconsistent statements are per se unreliable, supporting corroborative evidence must be reliable as a matter of law. *Giant*, ¶¶ 38-40.

¶23 Notably, however, circumstantial evidence alone can prove guilt beyond a reasonable doubt. *See State v. Finley*, 2011 MT 89, ¶ 29, 360 Mont. 173, 252 P.3d 199

8

("[T]he elements of a criminal offense do not require direct evidence and can be established by circumstantial evidence alone." (citation omitted)); *see also State v. Daniels*, 2019 MT 214, ¶ 43, 397 Mont. 204, 448 P.3d 511; *State v. Rosling*, 2008 MT 62, ¶ 36, 342 Mont. 1, 180 P.3d 1102. Circumstantial evidence is evidence that "tends to establish a fact by proving another and which, though true, does not of itself conclusively establish that fact but affords an inference or presumption of its existence." *Strobel*, ¶ 16 (quoting § 26-1-102, MCA). In *Strobel*, we reasoned, "If circumstantial evidence alone is sufficient to support a conviction, it certainly is sufficient to supply corroboration of a prior inconsistent statement." *Strobel*, ¶ 18 (citation omitted).

¶24    The Dissent argues a narrow view that corroborative evidence must "fill" the "evidentiary gap" left when a prior statement is the only direct proof of a fact necessary for conviction. Dissent, ¶¶ 55, 58. But in cases involving the use of a prior inconsistent statement as substantive evidence, corroborative circumstantial evidence must "*suppor[t] an inference* that an element of the action [or offense] occurred" as alleged in a witness's recanted (or, as here, forgotten) statement. *Dineen*, ¶ 12 (quoting *Jones v. All Star Painting, Inc.*, 2018 MT 70, ¶ 24, 391 Mont. 120, 415 P.3d 986) (emphasis added). It does not need to *supply* the proof.

¶25    In *Strobel*, we held that the "corroborating [evidence] does not have to be sufficient standing alone to prove guilt. It instead must 'support' the elements of the offense established by the substantive evidence the prior inconsistent statement supplies." *Strobel*, ¶ 18 (quoting *State v. Torres*, 2013 MT 101, ¶ 27, 369 Mont. 516, 299 P.3d 804). There, a bystander observed the defendant trying to shove the witness in a truck and reported it to

9

law enforcement, who on arrival observed the witness as visibly upset, crying, and intoxicated. *Strobel*, ¶ 3. The responding officer testified that the witness had told him the defendant grabbed her face and punched her twice in the face. *Strobel*, ¶ 3. Law enforcement observed no visible injuries on the witness. *Strobel*, ¶ 3. At trial, the witness claimed that she was very drunk at the time of the assault, could only vaguely remember what had happened, could not recall what she had told police, and that the defendant had not struck her in the face as alleged. *Strobel*, ¶ 5. We concluded that in a light most favorable to the prosecution, the corroborative evidence offered by the bystander's and the officer's observations supported the inference that the defendant had struck her in the face and that there was sufficient evidence to support a conviction of partner or family member assault. *Strobel*, ¶¶ 18, 20.

¶26 In *Dineen*, the defendant was convicted of strangulation, which has an essential element of covering the nose and mouth. *Dineen*, ¶¶ 7, 10 (citing § 45-5-215, MCA). The witness made out-of-court statements to four other witnesses that the defendant was "trying to kill [her]," "she couldn't breathe," and she felt like she was going to die. *Dineen*, ¶¶ 5-6. At trial, the witness recanted her statements and claimed that although the defendant had covered her mouth when he assaulted her, she was not afraid of him, nor did she fear for her life. *Dineen*, ¶ 4. The corroborative evidence supporting the witness's prior inconsistent statements included the witness's frenetic demeanor the night of the event and injuries to her mouth and throat. *Dineen*, ¶ 13. The defendant also had called the witness about 100 times that night as well as sent text messages and made statements that he had covered her mouth. *Dineen*, ¶ 13. We concluded that in the light most favorable to the

10

prosecution, a rational juror could make the inference that the defendant had covered her mouth and nose, and there was sufficient evidence to sustain a conviction. *Dineen*, ¶ 16.

¶27 The defendant argues, and the Dissent accepts, that, as our case law requires evidence to corroborate each element of the offense, his conviction cannot stand because the State failed to present evidence corroborating the essential fact that French penetrated K.K.. French misconstrues the principle first promulgated in *State v. White Water*, 194 Mont. 85, 88, 634 P.2d 636, 638 (1981), that "[a]n unreliable prior inconsistent statement should not be the sole, substantive evidence upon which a jury should be allowed to base guilt." We have reiterated and clarified this statement throughout our case law. *See Dineen*, ¶ 15 ("As long as there is reliable evidence to support each element, the corroborating evidence may be circumstantial.") (citation omitted); *Strobel*, ¶ 16 (quoting *Torres*, ¶ 27 ("As long as each element of the offense finds support in some independent, reliable evidence of guilt besides the prior statement . . . corroboration will be sufficient.")); *Giant*, ¶ 12 ("[A] criminal conviction cannot be sustained where the only evidence of some essential element of the crime is a prior inconsistent statement."). French argues for a principle that would require direct evidence corroborating a prior inconsistent statement.

¶28 Our case law is clear that corroborative evidence must support each element of the offense but need not independently prove the element it corroborates. *Strobel*, ¶ 16. Such evidence instead may support an inference that the events described in the prior inconsistent statement occurred. *Cf. Dineen*, ¶¶ 13, 16; *Strobel*, ¶ 18, *Torres*, ¶¶ 28, 30; *State v. Charlo*, 226 Mont. 213, 217-18, 735 P.2d 278, 280-81 (1987). The corroborative

11

evidence need only be reliable as a matter of law, *Giant*, ¶¶ 38-40, and support the substance of the prior inconsistent statement. *Strobel*, ¶ 18.

¶29 For example, in *Giant*, the sole corroborative evidence supporting Deborah's prior inconsistent statement identifying Giant as the assailant was the evidence of his flight, which this Court said was unreliable. *Giant*, ¶¶ 38-39. The remaining corroborative evidence—photographs of Deborah's injuries and evidence in the home—proved only that an assault had occurred. *Giant*, ¶¶ 14, 40. The Court explained, "This evidence, *which would normally be sufficient corroborating evidence*, is insufficient in this case because it does not corroborate the essential element of identity needed *because Deborah identified another possible assailant*." *Giant*, ¶ 40 (emphases added). This Court deemed the corroborative evidence insufficient because it was inconsequential when Deborah "refused to identify Giant as the assailant at trial." *Giant*, ¶ 40. The prior inconsistent statement was the *only* evidence that could identify the assailant. *Giant*, ¶¶ 15, 40.

¶30 The Dissent's emphasis on *Giant*'s discussion of the reliability of Deborah's prior inconsistent statements is misplaced. Dissent, ¶ 57 (discussing *Giant*, ¶ 37). In *Giant*, the State did not present evidence that Deborah had stopped cooperating to corroborate proof of the assailant's identity but to "reinforce the credibility of the prior statements." *Giant*, ¶ 37. Because that affected only the *reliability* of her pre-trial statements, the evidence was not *corroborative* of what she previously said. *Giant*, ¶ 37. This was important because we announced in *Giant* that we would not "continue down the path of analyzing the reliability of each and every type of prior inconsistent statement [but would] create a clear, bright-line rule . . . that require[s] prior inconsistent statements admitted as substantive

12

evidence of guilt be corroborated in order to sustain a conviction." *Giant*, ¶ 34. The only independent corroborative evidence the State presented on the element of identity was Giant's flight, which was per se unreliable. *Giant*, ¶¶ 38-40. Because flight and prior inconsistent statements each are unreliable evidence, "zero and zero cannot make one." *Giant*, ¶ 39. This is a critical distinction. The reason for *Giant*'s "bright-line" requirement of corroboration was to eliminate the need to determine the reliability of a prior inconsistent statement. Contrary to the Dissent's emphasis on the reliability of K.K.'s prior statements (Dissent, ¶ 55), it is the corroborating evidence, not the prior statement, that the court must find reliable. *Torres*, ¶ 27; *Giant*, ¶¶ 38-40. As discussed below, the State in this case presented reliable, independent corroborative evidence to support K.K.'s statements regarding the elements of the offense.

¶31    The corroborative evidence must have some consequence directly relevant to the inconsistencies at stake; it ultimately must support the veracity and substance of the prior inconsistent statement. *Cf. Dineen*, ¶¶ 13, 16; *Strobel*, ¶ 18; *Torres*, ¶¶ 28, 30; *Giant*, ¶¶ 38-40; *Charlo*, 226 Mont. at 217-18, 735 P.2d at 280-81. It need not, however, include independent, direct evidence of each fact establishing an element of the offense. In *Strobel*, for example, there was no other direct evidence that the defendant had punched the victim in the face; in *Dineen*, there was no other direct evidence that the defendant had covered both the victim's mouth and nose to cut off her supply of oxygen. In each case, the victim's prior statements supplied the substantive proof of those essential facts. The corroborative evidence supported an inference that they had occurred as the witness described. Corroborative evidence also need not render the prior inconsistent statement the only

13

feasible interpretation but rather afford an interpretation a rational trier of fact could accept. *See State v. Brady*, 2000 MT 282, ¶ 28, 302 Mont. 174, 13 P.3d 941 ("We have long held that when circumstantial evidence is susceptible to different interpretations, it is within the [province] of the jury to determine which will prevail.").

¶32   We have recognized that admissibility and sufficiency in cases involving prior inconsistent statements present two different inquiries. *Giant*, ¶ 21; *White Water*, 194 Mont. 85 at 89, 634 P.2d at 639. Whether corroborative evidence is sufficient to admit a prior inconsistent statement as substantive evidence depends on whether the corroborative evidence supports that the alleged crime occurred. *Cf. Dineen*, ¶¶ 13, 16; *Strobel*, ¶ 18; *Torres*, ¶¶ 28, 30; *Giant*, ¶¶ 38-40; *Charlo*, 226 Mont. at 217-18, 735 P.2d at 280-81. But whether the evidence is sufficient to maintain a conviction examines the prior inconsistent statement with which the corroborative evidence is paired together with the totality of the evidence presented. *Strobel*, ¶ 14 (citing *Torres*, ¶¶ 28, 30). Sufficient evidence is presented if, after reviewing *all* of the "evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements beyond a reasonable doubt." *Strobel*, ¶ 8 (citation omitted). "While each element of an offense must be proven by sufficient evidence, [t]he elements of a charged offense are factual in nature and their existence must be determined by a jury." *Spottedbear*, ¶ 23 (internal quotations and citations omitted).

¶33   The inconsistencies in K.K.'s statements were that she did not remember at trial if anything bad had happened to her, if she had told her father about what had happened to her at French and Tammy's home, or if she had talked to a forensic interviewer. Another

14

inconsistency the defense suggests is that K.K. first alleged that French's penis penetrated her mouth and later when showering, she implied to her mother that French had penetrated her vagina with his penis.

¶34 The State argues that K.K.'s prior inconsistent statements corroborate one another and are sufficient evidence when combined. This proposition, however, is analogous to the argument we rejected in *Giant*. K.K.'s prior inconsistent statements are insufficient as the sole evidence for establishing guilt and consequently are unreliable standing alone. One discrete prior inconsistent statement cannot corroborate a second discrete prior inconsistent statement because neither per se is reliable. The fact that K.K. made consistent statements more than once goes to her credibility, but the evidence corroborating a prior inconsistent statement must consist of reliable evidence independent of the hearsay statement.

¶35 Here, K.K.'s prior inconsistent statements are not the only evidence substantiating the elements of the charged offense. K.K. spent the night at French and Tammy's home on August 24, 2018. The next evening, when K.K. returned home, her father "blew up" and called his wife based on what K.K. told him. His wife testified that he sounded concerned and upset on the phone. Whatever K.K.'s father relayed to his wife prompted her to talk to her commander and leave military training a day early. Just after midnight on August 26, 2018, K.K.'s parents called law enforcement. Nearly a year later, K.K. again made a disclosure about that night that prompted her mother's immediate call to law enforcement.

¶36     Because K.K. made her statement on the evening she arrived home from French and Tammy's trailer, it may be inferred that the events K.K. described took place there. It may be inferred from her parents' reactions that K.K. had told them something disturbing and that it was not normal for her to make similar allegations. K.K. stayed at French and Tammy's home before A.M. and K.E. reported their abuse to law enforcement in September 2023. Because of this timing, it may be inferred that K.K.'s statements came from her own experience and not from overhearing others talking about what had happened to A.M. and K.E. In her 2019 forensic interview, K.K.'s demeanor in the video shows that she felt uncomfortable talking about what had happened to her, further confirming that the events made her scared, as she had previously expressed. The video also depicts K.K.'s visual description of what happened. She demonstrated her attempt to duck down and turn her head away from French. This evidence supports the inference that French committed sexual intercourse without consent as alleged in K.K.'s statements to her father, mother, and the forensic interviewer, and that he did so by penetrating her mouth with his penis, despite her attempt to turn away.

¶37     The rule is: "As long as each element of the offense finds support in *some* independent, reliable evidence of guilt besides the prior statement . . . corroboration will be sufficient." *Torres*, ¶ 27 (emphasis added). The corroborative evidence, although circumstantial, is independent, reliable evidence supporting the facts alleged in K.K.'s prior inconsistent statement. Though the District Court characterized the supporting evidence as "thin," the court also recognized it as the kind of corroborative evidence that allows a trial court to submit a prior inconsistent statement as substantive evidence.

16

¶38 For the corroborative evidence to sufficiently support K.K.'s prior inconsistent statement, it must substantiate that French was the assailant, and sexual intercourse—defined by penetration—occurred. *See* §§ 45-5-503, 45-2-101(68), MCA. K.K. disclosed to her father what had happened to her almost immediately after returning from French and Tammy's home. This fact supports the inference that French was the assailant. K.K. returned for a forensic interview nearly a year after she initially reported what happened because of unprompted statements she made to her mother while driving in the car. During the 2019 forensic interview, five-year-old K.K. initially was very active and animated. At some point during the interview, she began to withdraw, curling up on the chair and making gestures. She curled her head toward her chest and turned it away from the interviewer in response to the interviewer's questions. Nearly a year after K.K. first reported the incident, she acted out what she had done on the couch while at French and Tammy's house. Her depiction was unique to a specific scenario that K.K. was recalling at that moment—her efforts to avoid putting French's penis in her mouth. The 2019 forensic interview, even without hearing K.K.'s statements, supports the inference that penetration occurred.[2] Reviewing the reliable evidence independent of K.K.'s statements to others, the corroborative evidence sufficiently supports her prior inconsistent statements.

¶39 French persists, however, that the evidence remains insufficient because K.K.'s out-of-court statements are unreliable. On review, we do not ask "whether the evidence could have supported a different result. It is within the province of the jury to weigh the

---

[2] The Dissent does not meaningfully address this evidence when it concludes that the State did not present any corroborative evidence supporting the act of penetration. Dissent, ¶¶ 55, 58.

17

evidence based on the credibility of the witnesses and determine which version of events should prevail." *State v. Twoteeth*, 2024 MT 254, ¶ 22, 418 Mont. 488, 558 P.3d 790 (citation omitted).[3] K.K. remained consistent in her disclosure.[4] From 2018 to 2022, she never repudiated that French was the perpetrator, even providing a physical description of French during her 2019 forensic interview. She also never recanted that French penetrated her in some way. Although her statement made in 2021 provided the inference that French may have penetrated her vagina with his penis, and it is unclear from her statements whether French ejaculated, she was consistent throughout on the essential facts necessary to prove sexual intercourse without consent—penetration and that French was the assailant. *Cf. Giant*, ¶¶ 38-40.

¶40 It is only in rare cases that the evidence tells a story that is "'so inherently improbable or is so nullified by material self-contradiction that no fair-minded person could believe it' that we say no firm foundation exists for the verdict based on it." *Twoteeth*, ¶ 22 (citation omitted). This is not that case. The prosecution presented sufficient evidence to admit K.K.'s prior inconsistent statements as substantive evidence

---

[3] The District Court instructed the jury in part: "In deciding the believability and weight to be given the testimony of a witness, you may consider evidence of any other statement or statements made by the witness which are inconsistent with the witness's testimony. You may consider this evidence to test the believability and weight of the witness's testimony or to establish the truth of his or her statements." Jury Instruction No. 13, *State v. French*, No. BDC-19-280 (Mont. Eighth Jud. Dist. filed Apr. 27, 2022).

[4] The Dissent overlooks this distinguishing feature between *White Water* and the present case— the Court's impetus for deeming the witness's prior inconsistent statement unreliable. Dissent, ¶ 56. At trial Rhonda "testified . . . that she was not satisfied with the sheriff's statement because she felt the sheriff did not understand . . . (what she told him and) twisted . . . (her statements) around a little bit here and there." *White Water*, 194 Mont. at 87, 643 P.2d at 637. K.K. did not disclaim her prior inconsistent statements at trial; she simply could not remember them.

18

and, in the light most favorable to the prosecution, the totality of evidence is sufficient to sustain a conviction.

¶41 *2. Whether French is entitled to a new trial because the District Court did not substantially comply with the jury selection statute.*

¶42 French argues that the District Court abused its discretion when it denied his motion for a new trial. French sought a new trial based on testimony offered in *Hinkle*, a case also decided in the Eighth Judicial District. There, it became apparent that the clerk of court and sheriff were in violation of § 3-15-405, MCA (2023). The clerk revealed in her testimony that "since COVID," she drew jury pools on an annual basis. She received a list of names in May or June and notified those selected the following August or September by mailing a letter, questionnaire, and return envelope. In 2023, the method changed with the clerk sending notification of jury duty in a postcard and later sending a questionnaire with the summons. Under both methods, if the person did not respond, the clerk designated the names as "not deliverable" in her jury selection records and took no further action. She did not certify non-responders so that the sheriff could attempt personal delivery.

¶43 In *Hinkle*, the clerk sent notices to 200 people to procure a jury panel. Of those 200, 80 people responded who were not excused and were designated "checked-in." The clerk, authorized by standing order, excused around 66 people who responded. After becoming aware of the District's departure from the jury selection statute, the sheriff attempted to serve non-responders from *Hinkle*'s jury pool. The sheriff received a list of around 63 names from the clerk, although according to the clerk's calculation that number should have been closer to 54. Of the list of 63 non-responders the sheriff attempted to serve, 47

19

did not answer the door, nine were the wrong address, and seven were successfully served. The *Hinkle* court vacated its jury calendar to correct the problem.

¶44 Section 3-15-405, MCA (2023), directs the clerk of court to "serve notice by mail on the persons drawn as jurors and require the persons to respond by mail as to their qualifications to serve as jurors." Should the juror not respond, the clerk must then "certify the failure to the sheriff, who shall serve the notice personally on them." Section 3-15-405, MCA (2023). A district court must substantially comply with the statutory directives governing jury selection. *State v. Donahue*, 2025 MT 144, ¶ 33, 423 Mont. 1, 571 P.3d 1068 (citing *Hillious*, ¶ 17). Substantial compliance is not met when the district court's "lack of compliance affects the randomness and objectivity of the jury selection pool." *Donahue*, ¶ 33 (citing *Hillious*, ¶ 17).

¶45 In its order denying French's motion for a new trial, the District Court concluded that the motion was untimely because it exceeded the 30-day time limit under § 46-16-702, MCA. It also concluded that the attached testimony did not constitute evidence that French's jury was "skewed" or in some way not a "true cross-section of the community" and that the defendant's motion otherwise failed to provide any proof that his jury panel or trial was unfair.

¶46 A technical violation of the jury selection statute "do[es] not threaten the goals of random selection and objective disqualification" of jurors. *Hillious*, ¶ 18 (citation omitted). Even when the clerk's methods are "statistically non-random," a party must show that the discriminatory practices "prevented jury panels consisting of a fair cross section of the community." *Donahue*, ¶ 34 (citing *Hillious*, ¶ 19). A fair cross section "does not

20

guarantee that the juries will be of any particular composition, or that venires . . . be a substantially true mirror of the community." *State v. Kalina*, 2025 MT 70, ¶ 67, 567 P.3d 270, 421 Mont. 305 (quoting *Hillious*, ¶ 15) (internal brackets and quotations omitted). To fall within the ambit of a structural error, the party alleging a statutory violation must demonstrate that the departure "affected the random selection of . . . jurors and that the determination of juror excuses, disqualifications, and exclusions was based on subjective criteria." *Hillious*, ¶¶ 21, 30 (citations omitted).

¶47 French acknowledges that the clerk's and sheriff's violations of § 3-15-405, MCA, in his case are substantially similar to the facts presented in *Hillious* but contends that *Hillious* should be overruled. In *Hillious*, the clerk of court did not certify the non-responders to the sheriff to personally serve notice of jury duty but selected Hillious's jury pool from those who had responded to the questionnaire. *Hillious*, ¶¶ 8-11. Hillious argued that the clerk's departure from § 3-15-405, MCA (2023), violated his right to a fair and impartial jury. Because Hillious failed to demonstrate that the error affected the "random selection of his jury criteria or that jurors' exclusions were based on subjective criteria," we held that the errors were not structural but "technical and harmless." *Hillious*, ¶¶ 30-31.

¶48 *Hillious* is dispositive of French's claim. French fails to establish that the Eighth Judicial District's departure affected the random selection of jurors or was based on subjective criteria. French offers no arguments distinguishing his case from *Hillious* and has not demonstrated that it was manifestly wrong. *State v. Running Wolf*, 2020 MT 24,

¶ 22, 398 Mont. 403, 457 P.3d 218. Therefore, the District Court did not abuse its discretion in denying French's motion for a new trial.

## CONCLUSION

¶49 Reliable, independent corroborative evidence sufficiently supported K.K.'s prior inconsistent statements, and there was sufficient evidence to sustain French's conviction for sexual intercourse without consent. The District Court did not abuse its discretion when it concluded that French was provided a fair and impartial jury. We affirm the District Court's denial of French's motions to dismiss for insufficient evidence and for a new trial.


/S/ BETH BAKER


We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE


Justice Laurie McKinnon, concurring in part and dissenting in part.

¶50 I concur with the Court's resolution of Issue 2. However, because there was no evidence of any of the statutory elements of sexual intercourse without consent, aside from K.K.'s prior inconsistent statements, I would reverse French's conviction on that count. The only evidence supporting the statutory elements came from K.K.'s prior inconsistent statements to her parents and a forensic interviewer. Because those statements are hearsay, they are unreliable. In my opinion, evidence, whether direct or circumstantial, that does

not relate to the *content* of the prior inconsistent statements does not corroborate those statements.

¶51    The State must prove each element of a charge with sufficient evidence. *State v. Spottedbear*, 2016 MT 243, ¶ 23, 385 Mont. 68, 380 P.3d 810.  Although in Montana, "[p]rior inconsistent statements may be admitted as substantive evidence and may be considered in 'determining whether the evidence is sufficient to sustain the conviction[,]'" *Strobel*, ¶ 11 (quoting *Torres*, ¶ 27), most state jurisdictions allow prior inconsistent statements to be used for impeachment purposes only unless certain criteria, such as the witness's presence at trial and availability for cross-examination, are satisfied.  Indeed, in federal jurisdictions, a prior inconsistent statement is admissible only if the declarant is subject to cross-examination and the prior inconsistent statement "was given under the penalty of perjury at a trial, hearing, or other proceeding or deposition[.]"  F. R. Evid. 801(d)(1)(A).  Twenty-two states have adopted the more restrictive federal Rule verbatim, and another eleven states have allowed the admission of prior inconsistent statements *only* if the witness appears at trial and is available for cross-examination.[1]  Five states and the District of Columbia preclude the substantive use of prior inconsistent statements for any purpose except impeachment.[2]  Here, while K.K. appeared at trial, she was unavailable for cross-examination because she could not recall what French had done.  The mechanism for

_____

[1] Kasulis, *Commonwealth v. Lively: Pennsylvania Imposes Limitations on the Substantive Admissibility of Prior Inconsistent Statements of Non-Party Witnesses to Ensure Statement Reliability*, 38 Vill. L. Rev. 285, 307-08 (1993).

[2] Kasulis, *supra*, at 307-08.

ensuring reliability—cross-examination—was crucially absent. Under these circumstances, allowing K.K.'s prior inconsistent statement would not be allowed in an overwhelming majority of jurisdictions—all federal jurisdictions and 37 state jurisdictions. Thus, it is particularly important to scrupulously apply Montana's rule requiring that the contents of the statement be corroborated so that an element of the crime is proven through reliable evidence. While prior inconsistent statements may be admitted as substantive evidence in Montana, they are insufficient, standing alone, to prove a necessary element of a criminal offense and must be corroborated by other evidence. *Strobel*, ¶ 11. Montana's Legislature has defined "corroborative evidence" as "additional evidence of a different character to the same point." Section 26-1-102(3), MCA. The "point" requiring corroboration here is not merely that K.K. spent the night at French's home, appeared upset afterward, or was believed by her parents. It is the specific, essential element that distinguishes sexual intercourse without consent from other forms of misconduct: penetration. Evidence that goes only to opportunity, general distress, or credibility does not satisfy the Legislature's command that corroboration speaks to "the same point."

¶52 To convict French of sexual intercourse without consent, the State must prove an act of penetration beyond a reasonable doubt. "'Sexual intercourse' means penetration of the vulva, anus, or mouth of one person by the penis of another person . . . or body member of another person[.]" Section 45-2-101(68), MCA. K.K. never testified to penetration by French. The State sought to prove that element by admitting K.K.'s prior statements to her parents and a forensic interviewer, which is, standing alone, unreliable hearsay. The corroboration must not only go to the element of the offense which the inconsistent

24

statements are meant to establish; that the corroborating evidence must otherwise assure the trier of fact and, upon appellate review, cure the unreliability of the inconsistent statement. Contrary to the Court's mistaken reading of this Dissent, Opinion, ¶ 24, corroborating evidence does *not* have to be "direct" evidence; that is, "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Evidence*, *Black's Law Dictionary* (12th ed. 2024). However, it must corroborate the fact placed in dispute by the inconsistent statement, here penetration, through an inference, circumstance, or other competent evidence, which could include direct evidence. If there was direct evidence of penetration, there would be no need for the State to rely on hearsay evidence to meet its burden. A conviction based only on hearsay evidence to support an essential element of the offense compromises the integrity, reliability, and fairness of the trial process. Accordingly, this Court must carefully scrutinize the quality and nature of the corroborating evidence to ensure that the unreliable evidence is indeed corroborated.

¶53 For the most part, the Court correctly states the law. However, its application of the law to the facts is strained, at best. Though the Court cites § 26-1-102(3), MCA, defining corroboration, it relies on evidence which has no relevance to the "point." The "point" in need of corroboration is the act of penetration, which is a necessary element of the crime. Corroboration is sufficient as "long as each element of the offense finds support in some independent, reliable evidence of guilt besides the prior statement[.]" *Torres*, ¶ 27.

¶54 The Court concludes there is evidence other than K.K.'s prior inconsistent statements "substantiating the elements of the charged offense[,]" pointing out that K.K.'s

father became angry and called his wife after K.K. came home, that his wife left her training early after he called, that K.K.'s parents then called law enforcement, and that a year later K.K.'s mother called law enforcement again following K.K.'s disclosure. Opinion, ¶ 35. The Court holds that "it may be inferred that the events K.K. described" occurred as K.K. stated based on the reactions of her parents. Opinion, ¶ 36. The Court also cites K.K.'s demeanor when she made the prior inconsistent statement itself as corroborating evidence. Opinion, ¶ 36.

¶55 Here, the only evidence of penetration came from K.K.'s prior inconsistent statements. No independent and reliable evidence corroborated the statements made by K.K. that French penetrated her. K.K.'s parents' testimony corroborated that K.K. had spent the night at French's home, that K.K.'s statement upon returning home to her father upset him, that father's statement to mother prompted mother to call law enforcement, and that a statement a year later prompted mother again to call law enforcement. None of the evidence the Court relies on for corroboration addresses the content of K.K.'s statements. It is not "additional evidence of the same point" of the prior inconsistent statement—that French penetrated K.K. As a matter of law, the State has not met its burden of proving beyond a reasonable doubt each element of the offense when the only evidence of the necessary elements comes from the uncorroborated prior inconsistent statements of the child. Nor does the evolution of K.K.'s statements supply corroboration. Over time, her accounts shifted from oral penetration with imagery of "peeing" in her mouth, to a description that suggested no emission, to a later statement about a boy trying to put his penis "down there," referring to her genital area. At trial, under oath, she could not

26

remember that anything had happened. These internal contradictions go to the heart of the reliability concerns that gave rise to Montana's corroboration rule. They explain the evidentiary gap that corroboration must fill; here, they do not fill it.

¶56    In *White Water*, White Water was charged with sexual intercourse without consent after he was alleged to have penetrated the victim's vagina with his finger. *White Water*, 194 Mont. at 86, 634 P.2d at 636-37. The only evidence supporting penetration was the victim's prior inconsistent statement. *White Water*, 194 Mont. at 90, 634 P.2d at 639. The victim had told law enforcement White Water placed his hand down the back of her pants and penetrated her vagina with his finger. *White Water*, 194 Mont. at 86-87, 634 P.2d at 637. At trial, however, the victim testified that White Water had only touched her "butt" next to her skin and then removed his hand when her mother came into the room. *White Water*, 194 Mont. at 87, 634 P.2d at 637. The victim's mother testified that she had no knowledge of whether penetration occurred and that all she saw when she came into the room was White Water removing his hand from the victim's underwear. *White Water*, 194 Mont. at 87, 634 P.2d at 637. We affirmed the dismissal of the charge because the victim's prior inconsistent statement to law enforcement was not corroborated by the mother or other independent and reliable evidence. *White Water*, 194 Mont. at 88, 634 P.2d at 638.

¶57    In *Giant* we observed that an essential element of the offense was the identity of the victim's assailant. *Giant*, ¶ 40. Giant was charged with aggravated assault after the victim reported to law enforcement that Giant attacked her from behind by wrapping duct tape around her neck, threatening her with a gun, and dragging her by the hair to a bedroom. *Giant*, ¶¶ 3-4. A search of the house produced pieces of duct tape, a broken steak knife,

blood-stained clothing and bedding, a large piece of black plastic, and a gun and ammunition. *Giant*, ¶ 4. At trial, the victim identified her assailant as her son, and not Giant. *Giant*, ¶ 6. Although finding that the evidence clearly established that an assault had occurred, there was no corroboration of the victim's prior inconsistent statement that Giant was her assailant. *Giant*, ¶ 8. We declined the State's invitation to conclude there was corroboration through evidence that the victim had stopped cooperating with the County Attorney when Giant was released on bail and that she had asked the criminal charges against Giant be dismissed after her divorce proceedings were dismissed. *Giant*, ¶ 37. We found "none of this evidence independently corroborates the statements" and that the victim's "prior statements alone are insufficient as a matter of law to support Giant's convictions." *Giant*, ¶ 37.

¶58 In *White Water*, the mother's testimony that she saw the defendant's hand down the back of the child's pants corroborated only that some inappropriate contact occurred. It did not corroborate the child's prior statement that digital penetration had occurred, and we therefore held the evidence insufficient as a matter of law. *White Water*, 194 Mont. at 88-90, 634 P.2d at 638-39. Likewise, in *Giant*, photographs of the victim's injuries corroborated that a brutal assault occurred, but they did not corroborate the contested element of identity, and the only evidence on that point was the victim's prior inconsistent statements combined with the defendant's flight—both forms of unreliable proof. *Giant*, ¶¶ 38-40. These cases illustrate that corroboration must reach the same element that the prior statement supplies. Here, the State's evidence of K.K.'s presence in the home, her

parents' reactions, and her discomfort during a later interview may corroborate opportunity and explain why her parents believed her, but they do not corroborate penetration.

¶59　　The Court relies heavily on *Strobel*, *Dineen*, and *Torres* to justify a more relaxed corroboration standard. Properly understood, those decisions are consistent with *White Water* and *Giant* rather than contrary to them. In *Strobel*, corroboration included a third-party eyewitness and the victim's distraught demeanor contemporaneous with the assault, directly supporting the allegation of physical attack. *Strobel*, ¶¶ 3, 18. In *Dineen*, the victim's throat and mouth injuries, coupled with the defendant's own statements, corroborated the prior allegation that he covered her mouth and nose and cut off her breathing. *Dineen*, ¶¶ 13, 16. In *Torres*, independent evidence placed the defendant at the scene and corroborated each element of the offense. *Torres*, ¶ 27. In each case, circumstantial corroboration bore on the same contested element as the prior statement. Here, by contrast, the State offered no physical evidence, no inculpatory statements by French, and no third-party observations of sexualized contact. The evidence on which the Court relies does not corroborate penetration; it corroborates only opportunity and reaction.

¶60　　The Court emphasizes that it is "within the province of the jury to weigh the evidence based on the credibility of the witnesses," Opinion, ¶ 39, and that we must view the evidence in the "light most favorable to the prosecution," Opinion, ¶ 40. However, whether corroborative evidence exists is a question of law, not of witness credibility. We do not ask whether a rational juror could choose to believe a prior inconsistent statement; we ask whether the State has offered "additional evidence of a different character to the same point" such that a conviction does not rest on the prior statement alone.

29

Section 26-1-102(3), MCA; *White Water*, 194 Mont. at 88-90, 634 P.2d at 638-39; *Giant*, ¶¶ 30-34. Treating the absence of corroboration as merely a question for the jury collapses the corroboration requirement into the general sufficiency standard and permits precisely what our cases forbid: conviction on uncorroborated prior inconsistent statements.

¶61 The Court upholds a conviction of sexual intercourse without consent based on prior inconsistent statements of a young child, unavailable for cross-examination because she does not remember, and concludes the reactions of the child's parents in contacting law enforcement are sufficient corroborating evidence of the content of those statements. This is clearly wrong. The State failed to produce any evidence, other than prior inconsistent statements, which established penetration, a necessary element of the crime. In my opinion, the Court's stretch to find corroboration distorts the law and misconstrues the record.

¶62 I respectfully dissent from Issue 1 of the Court's decision.

/S/ LAURIE McKINNON

Justices Ingrid Gustafson and Katherine Bidegaray join in the concurring and dissenting Opinion of Justice Laurie McKinnon.

/S/ INGRID GUSTAFSON
/S/ KATHERINE M. BIDEGARAY